# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued September 15, 2014      Decided March 20, 2015

No. 13-3032

UNITED STATES OF AMERICA,
APPELLEE

v.

LUIS ALBERTO MUNOZ MIRANDA, ALSO KNOWN AS DAVID,
ALSO KNOWN AS EL GORDO,
APPELLANT

Consolidated with 13-3036

Appeals from the United States District Court
for the District of Columbia
(No. 1:10-cr-00106-5)
(No. 1:10-cr-00106-2)

*Douglas J. Behr*, appointed by the court, argued the cause for appellants. With him on the briefs was *Elita C. Amato*, appointed by the court.

*John-Alex Romano*, Attorney, U.S. Department of Justice, argued the cause and filed the brief for appellee. *David M. Lieberman*, Attorney, U.S. Department of Justice, entered an appearance.

2

Before: SRINIVASAN, *Circuit Judge*, and EDWARDS and SENTELLE, *Senior Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* SRINIVASAN.

SRINIVASAN, *Circuit Judge*:  Luis Alberto Munoz Miranda and Francisco Jose Valderrama Carvajal, citizens of Colombia, pleaded guilty to drug conspiracy charges under the Maritime Drug Law Enforcement Act (MDLEA).  They contend on appeal that the MDLEA is unconstitutional as applied to their conduct, that the MDLEA fails to reach extraterritorially to encompass their conduct in Colombia, and that the facts in the record fail to support acceptance of their guilty pleas.  We reject their challenges and affirm their convictions.

Appellants waived all but one of the arguments they now raise when they entered pleas of guilty without reserving any right to appeal their convictions.  With respect to their remaining claim, concerning whether vessels used by the drug conspiracy were "subject to the jurisdiction of the United States" within the meaning of the MDLEA, that issue implicates the district court's subject-matter jurisdiction and thus could not be waived by appellants' guilty pleas.  On the merits of the issue, however, appellants' statements of stipulated facts fully support the district court's conclusion that the relevant vessels were subject to the jurisdiction of the United States.

I.

On April 23, 2010, a federal grand jury indicted Munoz Miranda and Valderrama Carvajal, along with others not before us on appeal, for participating in an international drug smuggling conspiracy in violation of the MDLEA, 46 U.S.C.

§§ 70501 *et seq.* The indictment charged appellants with conspiring to distribute a controlled substance on board "vessel[s] subject to the jurisdiction of the United States." *Id.* § 70503(a)(1). The drug smuggling operation used "go-fast" boats (small boats capable of traveling undetected and at high speeds) to move drugs from Colombia to various Central American countries. From 2006 to 2010, the smuggling organization transported large quantities of drugs in numerous shipments.

Neither Munoz Miranda nor Valderrama Carvajal planned to, or did, leave Colombia in furtherance of the conspiracy. Valderrama Carvajal served as an organizer of the smuggling operations, and Munoz Miranda provided logistical support. In 2011, Colombian officials arrested Munoz Miranda and Valderrama Carvajal. They were extradited to the United States shortly thereafter.

In the district court, Munoz Miranda and Valderrama Carvajal moved to dismiss their indictments on a number of grounds. They claimed that the ships used by the conspiracy did not satisfy the statutory definition of vessels "subject to the jurisdiction of the United States," 46 U.S.C. § 70502(c), because the ships were in Colombian waters at the time of capture. Appellants further contended that, because their conspiratorial acts did not take place on board any vessel, the MDLEA does not reach their conduct. They also challenged the constitutionality of the MDLEA on two grounds, claiming (i) that Congress lacks Article I authority to criminalize their extraterritorial conduct, and (ii) that applying the statute against them without demonstrating a nexus to the United States violates their due process rights. On October 11, 2012, the district court orally denied appellants' motions to dismiss.

The next day, appellants moved to enter guilty pleas under Federal Rule of Criminal Procedure 11. Each appellant executed an unconditional guilty plea agreement that did not "reserve[] in writing the right to have an appellate court review an adverse determination of a specified pretrial motion." Fed. R. Crim. P. 11(a)(2). Appellants entered joint statements of stipulated facts in support of their respective guilty pleas. They both stipulated that, from 2006-2010, they were "co-conspirator[s] in a drug trafficking organization which . . . transported narcotics from Colombia on stateless go-fast vessels through international waters." J.A. 93, 128.

Appellants' statements of stipulated facts also differed in certain respects. Munoz Miranda identified one particular shipment as an example of the conspiracy's use of stateless vessels to transport drugs: a shipment intended to travel from Colombia to Honduras "on board a go-fast boat" that was "not registered in Colombia and did not fly a Colombian flag." J.A. 94. That shipment never left Colombia because it was stolen before it could be moved. Valderrama Carvajal identified the same shipment as an example of the conspiracy's actions, and also described a second shipment as an additional example. The latter shipment departed Colombia on board a go-fast boat that "was not registered in Colombia or any other nation, and contained no registration identification." J.A. 129. Colombian authorities intercepted that vessel when it ran aground on Roncador Island, a remote Colombian island in the Caribbean Sea.

At their plea hearing, appellants confirmed that they knowingly and voluntarily entered pleas of guilty and waived any right to appeal. On October 12, 2012, the district court accepted both guilty pleas based on appellants' joint statements of stipulated facts. But before their sentencing could take

place, appellants filed a joint motion for reconsideration of their original motions to dismiss.

On February 20, 2013, the district court issued an opinion denying reconsideration and memorializing the reasons for its oral denial of the original motions to dismiss. The court first explained that, as established by appellants' factual stipulations, the two vessels identified as examples of the conspiracy's use of stateless boats—the vessel intercepted off of Roncador Island and the vessel intended to transport the stolen shipment—were both "without nationality" under the MDLEA's definition and thus were "subject to the jurisdiction of the United States." 46 U.S.C. § 70502(c)(1), (d). With respect to the extraterritorial reach of the statute, the court held that the MDLEA's conspiracy provision applies extraterritorially to encompass appellants' conduct. Finally, the court determined that the MDLEA, as applied to appellants, was a valid exercise of Congress's authority to define and punish "Felonies committed on the high Seas," U.S. Const. art. I, § 8, cl. 10, and that the MDLEA's extraterritorial application worked no infringement of appellants' due process rights.

II.

Munoz Miranda and Valderrama Carvajal appeal the district court's denial of their motions to dismiss and their related joint motion for reconsideration, as well as their judgments of conviction. Appellants raise both constitutional and statutory claims.

For each of appellants' arguments, we must first determine whether appellants' unconditional guilty pleas waived their right to appeal the issue. "It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally

attacked." *Bousley v. United States*, 523 U.S. 614, 621 (1998) (internal quotation marks omitted). A defendant who pleads guilty can do so conditionally, reserving the ability to raise particular challenges on appeal. *See* Fed. R. Crim. P. 11(a)(2). Here, though, appellants entered unconditional guilty pleas, thereby waiving all challenges amenable to waiver. *See United States v. Delgado-Garcia*, 374 F.3d 1337, 1341 (D.C. Cir. 2004). Appellants therefore make no claim that their guilty pleas reserved their ability to press the arguments they now present.

Appellants instead contend that their arguments are immune from waiver. "There are two recognized exceptions" to the rule that an unconditional guilty plea waives a "defendant['s] claims of error on appeal." *Id.* First, a challenge to the district court's subject-matter jurisdiction—to the court's power to hear a given case—can never be waived or forfeited. *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006); *United States v. Cotton*, 535 U.S. 625, 630 (2002); *Delgado-Garcia*, 374 F.3d at 1341. Second, certain constitutional challenges asserting a "right not to be haled into court at all" cannot be waived through a guilty plea. *Blackledge v. Perry*, 417 U.S. 21, 31 (1974); *see also Menna v. New York*, 423 U.S. 61, 62 (1975) (per curiam); *Delgado-Garcia*, 374 F.3d at 1341.

Appellants contend that either the subject-matter jurisdiction exception or the so-called *Blackledge/Menna* exception insulates each of their arguments from waiver. For the most part, we disagree. With regard to all but one of appellants' claims, we find that appellants' unconditional guilty pleas effected a waiver. One of their arguments, however, goes to the district court's subject-matter jurisdiction and cannot be waived: the argument that the vessels in question are not "subject to the jurisdiction of the United

States" within the meaning of the MDLEA. 46 U.S.C. § 70502(c). While we thus reach the merits of that issue, we conclude, contrary to appellants' argument, that the vessels are in fact "subject to the jurisdiction of the United States."

A.

Appellants contend that the MDLEA is unconstitutional as applied to their conduct in two respects. First, appellants argue that Congress lacks power under the High Seas Clause of Article I to criminalize their actions in furtherance of the charged conspiracy because their conduct did not itself take place on the high seas. *See* U.S. Const. art. I, § 8, cl. 10 (granting Congress authority to "define and punish . . . Felonies committed on the high Seas"). Second, appellants contend that application of the MDLEA to their extraterritorial conduct violates their Fifth Amendment due process rights in the absence of a demonstrated nexus between their actions and the United States. *Cf. United States v. Ali*, 718 F.3d 929, 943 (D.C. Cir. 2013) (noting that "this Circuit has yet to speak definitively" on whether "due process may impose limits on a criminal law's extraterritorial application"). We do not reach the merits of those claims because we conclude they were waived by appellants' unconditional guilty pleas.

Appellants contend that their constitutional challenges fall within the subject-matter jurisdiction exception to waiver. We disagree. While appellants point to decisions from our sister circuits holding that certain *facial* challenges to the constitutionality of a statute implicate subject-matter jurisdiction, *see, e.g.*, *United States v. Saac*, 632 F.3d 1203, 1208 (11th Cir. 2011), those decisions do not address whether *as-applied* constitutional challenges can be waived, *see United States v. Phillips*, 645 F.3d 859, 863 (7th Cir. 2011). Article III vests federal courts with authority to decide cases "arising

under . . . the Laws of the United States," U.S. Const. art. III, § 2, cl. 1, and Congress has granted the district courts general subject-matter jurisdiction over "all offenses against the laws of the United States" under 18 U.S.C. § 3231. Appellants do not dispute that the MDLEA was validly enacted and that it constitutes a "law[] of the United States" for purposes of 18 U.S.C. § 3231. They instead argue that application of the MDLEA to their particular conduct offends the Constitution in two ways. But those arguments do not call into question the district court's subject-matter jurisdiction over this case pursuant to Article III and 18 U.S.C. § 3231.

Our decision in *Delgado-Garcia* is controlling on this score. There, the defendants raised precisely the same due process challenge pressed by appellants here, contending that their convictions violated the Fifth Amendment because the government "did not prove a 'nexus' between [their] conduct and the United States," which "they claim[ed] the Fifth Amendment's due process clause requires." *Delgado-Garcia*, 374 F.3d at 1341. We held that the defendants had waived that constitutional claim by entering unconditional guilty pleas, and we rejected the defendants' argument that their challenge fell within the subject-matter jurisdiction exception to the waiver rule. *Id.* at 1342. The defendants' "Fifth Amendment claim," we explained, "is irrelevant to the court's Article III subject matter jurisdiction. The Constitution by its terms leaves it solely to Congress to allocate that power by statute, and there is no claim in this case that this jurisdictional grant is somehow independently unconstitutional." *Id.*

That conclusion governs the resolution of appellants' parallel Fifth Amendment claim here. And there is no reason to reach any different conclusion with respect to appellants' as-applied challenge concerning Congress's Article I authority under the High Seas Clause. For both challenges, the question

whether the MDLEA can be constitutionally applied to appellants' conduct is a merits question within the district court's authority to decide, not an antecedent question going to the district court's subject-matter jurisdiction over the case.

It is equally clear that the *Blackledge*/*Menna* exception fails to immunize appellants' constitutional claims from waiver. Together, *Blackledge* and *Menna* stand for the proposition that certain constitutional challenges are immune from waiver regardless of whether they raise issues of subject-matter jurisdiction. In *Blackledge*, the Court held that a due process challenge arising from repetitive, vindictive prosecution for the same crime could not be waived by guilty plea in a situation in which the alleged violation was apparent on the face of the indictment. 417 U.S. at 30. In *Menna*, the Court reached the same conclusion in the context of a double jeopardy challenge to an "indictment [that] was facially duplicative of [an] earlier offense of which the defendant had been convicted and sentenced." *United States v. Broce*, 488 U.S. 563, 575 (1989) (describing *Menna*); *see Menna*, 423 U.S. at 62-63 & n.2. *Blackledge* and *Menna* involved circumstances in which the defendant claimed a constitutional "right not to be haled into court at all" as opposed to asserting a "deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Blackledge*, 417 U.S. at 30 (internal quotation marks omitted); *see Broce*, 488 U.S. at 574; *Delgado-Garcia*, 374 F.3d at 1342-43.

Appellants contend that their due process and Article I challenges fall within the *Blackledge*/*Menna* exception. Once again, our decision in *Delgado-Garcia* forecloses their argument. We held there that the *Blackledge*/*Menna* exception did not encompass the same due process claim advanced by appellants here. Such a challenge "is a claim that the due process clause limits the substantive reach of the

conduct elements" of the statute that the defendants were charged with violating, "not a claim that the court lacks the power to bring them to court at all." 374 F.3d at 1343. As a result, "[e]ven if the prosecution of [the defendants] violated the Fifth Amendment for this reason, [they] would still need to come to 'court to answer the charge brought against' them." *Id.* (quoting *Blackledge*, 417 U.S. at 30).

That conclusion not only governs appellants' parallel due process claim, but it also applies to appellants' Article I challenge. The latter argument amounts to a contention that the High Seas Clause "limits the substantive reach of the conduct elements" of the MDLEA. *Id.* Even if application of the MDLEA to appellants' conduct exceeded the legislative power granted by the High Seas Clause, they "would still need to come to 'court to answer the charge brought against' them." *Id.* (quoting *Blackledge*, 417 U.S. at 30). In *Blackledge* and *Menna*, by contrast, the very act of haling the defendants into court completed the constitutional violation. We therefore conclude that neither of appellants' constitutional claims qualify for the *Blackledge/Menna* exception. As a result, appellants cannot raise those claims in this court.

## B.

In addition to their constitutional claims, appellants raise two arguments under the terms of the MDLEA. First, they contend that the MDLEA's conspiracy provision, 46 U.S.C. § 70506(b), does not apply extraterritorially to encompass their charged conduct in Colombia. Because the *Blackledge/Menna* exception applies only to constitutional challenges, appellants can avoid waiver only if their statutory argument goes to the subject-matter jurisdiction of the court. *See Menna*, 423 U.S. at 62 ("Where the State is precluded by *the United States Constitution* from haling a defendant into

court on a charge, federal law requires that a conviction on that charge be set aside even if the conviction was entered pursuant to a counseled plea of guilty." (emphasis added)).

The extraterritorial reach of a statute ordinarily presents a merits question, not a jurisdictional question. The Supreme Court's decision in *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010), is illustrative. That case addressed whether § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), reaches extraterritorially to cover misconduct in connection with securities traded on foreign exchanges. The Court concluded that the statute failed to encompass the alleged misconduct, but the Court first held that the question of the statute's extraterritorial reach is not an issue of subject-matter jurisdiction. *Id.* at 253-54. "[T]o ask what conduct § 10(b) reaches," the Court explained, "is to ask what conduct § 10(b) prohibits, which is a merits question." *Id.* at 254. "Subject-matter jurisdiction, by contrast, refers to a tribunal's power to hear a case." *Id.* (internal quotation marks omitted). The district court in *Morrison* thus had subject-matter jurisdiction "to adjudicate the question whether § 10(b) applies to [the defendant's] conduct." *Id.*

Appellants identify no reason for any different conclusion here. Just as in *Morrison*, to ask "what conduct [the MDLEA] reaches is to ask what conduct [the MDLEA] prohibits, which is a merits question," not a question of subject-matter jurisdiction. *Id.* Nothing in the terms of the MDLEA suggests any intention by Congress to depart from that ordinary understanding. The district court therefore had jurisdiction "to adjudicate the question whether [the MDLEA] applies to [appellants'] conduct." *Id.* It follows that the subject-matter jurisdiction exception affords appellants no relief from the waiver rule for unconditional guilty pleas.

12

C.

In their second claim under the statute, appellants contend that their charged offenses did not involve "vessel[s] subject to the jurisdiction of the United States" as defined by the MDLEA. 46 U.S.C. § 70502(c). Unlike appellants' other arguments, this one, we conclude, goes to the district court's subject-matter jurisdiction. Appellants therefore may raise (and we must address) the issue notwithstanding their entry of unconditional guilty pleas. On the merits, we affirm the district court's conclusion that the relevant vessels qualify as "subject to the jurisdiction of the United States." *Id.*

1.

The MDLEA prohibits manufacturing, distributing, or possessing with intent to distribute drugs "on board" (i) a "vessel of the United States," (ii) a "vessel subject to the jurisdiction of the United States," or (iii) "any vessel if the [defendant] is a citizen of the United States or a resident alien of the United States." 46 U.S.C. § 70503(a). The charges against appellants solely involve the second category. The statute's definition of "vessel[s] subject to the jurisdiction of the United States" encompasses certain non-United States vessels, including "vessel[s] without nationality." *Id.* § 70502(c)(1)(A).

The MDLEA prescribes that, in cases involving "vessels subject to the jurisdiction of the United States," the question whether the vessels at issue qualify as "subject to the jurisdiction of the United States" is a threshold question to be resolved by the district court, not a question for the jury: "Jurisdiction of the United States with respect to a vessel subject to this chapter is not an element of an offense. Jurisdictional issues arising under this chapter are preliminary

questions of law to be determined solely by the trial judge." 46 U.S.C. § 70504(a). If the "preliminary question" whether the vessels in issue are "subject to the jurisdiction of the United States" goes to the district court's subject-matter jurisdiction, it is immune from waiver.

The courts of appeals that have addressed the issue disagree on whether United States jurisdiction over a vessel under § 70504(a) presents a question of subject-matter jurisdiction. The Eleventh Circuit understands the MDLEA's "on board a vessel subject to the jurisdiction of the United States" requirement to be a "congressionally imposed limit on courts' subject matter jurisdiction, akin to the amount-in-controversy requirement contained in 28 U.S.C. § 1332." *United States v. De La Garza*, 516 F.3d 1266, 1271 (11th Cir. 2008); *see United States v. Tinoco*, 304 F.3d 1088, 1107 (11th Cir. 2002). The Fifth Circuit agrees. *See United States v. Bustos-Useche*, 273 F.3d 622, 626 (5th Cir. 2001). The First Circuit has reached the opposite conclusion, holding that Congress used the term "jurisdiction" in § 70504(a) "loosely" to "describe its own assertion of authority to regulate," as it does "whenever it fixes an 'affects interstate commerce' or 'involved a federally insured bank' as a condition of the crime." *United States v. Gonzalez*, 311 F.3d 440, 443 (1st Cir. 2002). Such issues, the First Circuit reasoned, "have nothing whatever to do with the subject matter jurisdiction of the federal district court," but instead "are routine questions as to the reach and application of a criminal statute." *Id.*

We agree with the Fifth and Eleventh Circuits and conclude that, under § 70504(a), the question whether a vessel is "subject to the jurisdiction of the United States" is a matter of subject-matter jurisdiction. In a series of decisions, the Supreme Court has addressed whether a threshold statutory

condition like § 70504(a) speaks to the district courts' subject-matter jurisdiction. *See Henderson ex rel. Henderson v. Shinseki*, 131 S. Ct. 1197 (2011); *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010); *Arbaugh*, 546 U.S. 500; *Eberhart v. United States*, 546 U.S. 12 (2005) (per curiam). Those decisions contemplate "a 'readily administrable bright line' rule for deciding such questions." *Henderson*, 131 S. Ct. at 1203 (quoting *Arbaugh*, 546 U.S. at 515-16). "If the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts will be duly instructed and will not be left to wrestle with the issue." *Arbaugh*, 546 U.S. at 515-16 (footnote omitted). "But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character." *Id.* at 516.

That approach indicates that the question whether a vessel is "subject to the jurisdiction of the United States" goes to subject-matter jurisdiction. The issue is framed as a "threshold limitation on [the] statute's scope," and "the Legislature clearly state[d] that" it should "count as jurisdictional." *Arbaugh*, 546 U.S. at 515. Congress prescribed that the "[j]urisdiction of the United States with respect to a vessel" is a "[j]urisdictional issue[]." 46 U.S.C. § 70504(a). Congress also deemed that "jurisdictional issue" to be a "preliminary question[] of law . . . determined solely by the trial judge." *Id.* The "preliminary question" set out in § 70504(a) thus operates precisely in the nature of a condition on subject-matter jurisdiction: subject-matter jurisdiction presents a question of law for resolution by the court, and courts have an "obligation to determine whether subject-matter jurisdiction exists" as a preliminary matter. *Arbaugh*, 546 U.S. at 514. Congress not only specified that the "jurisdiction of the United States with respect to a vessel" is a threshold question determined by the court, but also that it is "not an

element of the offense," 46 U.S.C. § 70504(a), fortifying its jurisdictional character. *See Arbaugh*, 546 U.S. at 514 (distinguishing statutory conditions that function as "element[s] of a claim" from those that go to subject-matter jurisdiction, and explaining that courts resolve the latter whereas juries resolve the former).

In addition, "context . . . is relevant to whether a statute ranks a requirement as jurisdictional," *Reed Elsevier*, 559 U.S. at 168, and here, the context of § 70504(a) strongly suggests a requirement of subject-matter jurisdiction. To understand why, it is important first to recognize that "[b]randing a rule as going to a court's subject-matter jurisdiction" is "of considerable practical importance for judges and litigants." *Henderson*, 131 S. Ct. at 1202. If the "jurisdiction of the United States with respect to a vessel" presents a requirement of subject-matter jurisdiction, the requirement would be immune from waiver or forfeiture by a defendant, and courts would bear an independent obligation in every case—and at every level of appellate review—to assure its satisfaction, regardless of whether a party were to raise it. *See id.*; *Arbaugh*, 546 U.S. at 514. On the other hand, if the requirement is non-jurisdictional, a court could forgo addressing it unless it is timely advanced by a party, and a defendant could either forfeit the issue by overlooking it or waive it by electing not to press it. *See Henderson*, 131 S. Ct. at 1202; *Arbaugh*, 546 U.S. at 514.

Those practical considerations ordinarily weigh in favor of construing a threshold statutory condition to be non-jurisdictional. *See Henderson*, 131 S. Ct. at 1202. Here, however, there are strong reasons to conclude that Congress intended the "jurisdiction of the United States with respect to a vessel" to be non-waivable and non-forfeitable by a defendant and to be independently confirmed by courts regardless of

whether it is raised. In particular, Congress made the requirement a jurisdictional one in order to minimize the extent to which the MDLEA's application might otherwise cause friction with foreign nations.

The MDLEA defines certain non-United States vessels as "subject to the jurisdiction of the United States," including a "vessel without nationality," a "vessel registered in a foreign nation if that nation has consented or waived objection to the enforcement of United States law by the United States," or a "vessel in the territorial waters of a foreign nation if the nation consents to the enforcement of United States law by the United States." 46 U.S.C. § 70502(c)(1)(A), (C), (E). With respect to the first of those categories, the statute in turn defines a "vessel without nationality" to include a "vessel aboard which the master or individual in charge makes a claim of registry that is denied by the nation whose registry is claimed," and a "vessel aboard which the master or individual in charge makes a claim of registry and for which the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality." *Id.* § 70502(d)(1)(A), (C). The MDLEA goes on to set forth certain methods for ascertaining the "[c]onsent or waiver of objection by a foreign nation to the enforcement of United States law by the United States," or the "response of a foreign nation to a claim of registry." *Id.* § 70502(c)(2), (d)(2). In short, a foreign nation's "consent," "waiver," or "response" plays a central role in determining whether a vessel is "subject to the jurisdiction of the United States" under the MDLEA.

In that setting, it is eminently understandable why Congress would want the "[j]urisdiction of the United States with respect to a vessel," *id.* § 70504(a), to be insulated from waiver or forfeiture by a defendant, and would also want courts in every case—and at every level of review—to assure that the

requirement is satisfied. The requirement aims to protect the interests of foreign nations, not merely the interests of the defendant. It therefore is not a requirement that the defendant alone can waive by choice or forfeit by inadvertence. If a defendant could waive or forfeit the requirement regardless of the interests of a foreign nation whose prerogatives may be directly at stake, application of the MDLEA could engender considerable tensions in foreign relations.

Suppose, for instance, that a defendant wishes to plead guilty and thus has no desire to dispute that a vessel is "subject to the jurisdiction of the United States," even though the vessel is "registered in a foreign nation" and "that nation has [not] consented or waived objection to the enforcement of United States law by the United States." *Id.* § 70502(c)(1)(C). Or suppose that, in the same circumstances, the defendant inadvertently fails to raise the issue in the district court. If a court were to decline to address the issue on the theory that the defendant had waived or forfeited any objection, application of the MDLEA could cause substantial discord with a foreign nation. Congress guarded against that risk by rendering the "jurisdiction of the United States over a vessel" a condition on subject-matter jurisdiction, thereby obligating courts to examine the matter regardless of whether a defendant presses or preserves it. *Compare Cotton*, 535 U.S. at 629-31 (holding that a defendant's protection against defective indictments is waivable by the defendant and thus does not affect subject-matter jurisdiction).

Notably, Congress demonstrated the same sensitivity to the interests of affected foreign sovereigns in another provision of the MDLEA—enacted contemporaneously with § 70504(a), *see* Pub. L. 104-324, 110 Stat. 3901 (1996)—under which a defendant lacks "standing to raise a claim of failure to comply with international law as a basis for a defense" because the

defense "may be made only by a foreign nation." 46 U.S.C. § 70505. Under § 70504(a), similarly, a foreign nation's stake in the application of the MDLEA in cases involving a non-United States vessel asserted to be subject to United States jurisdiction means that a defendant effectively lacks "standing" to waive or forfeit the issue of United States jurisdiction over the vessel. Congress, moreover, cabined the jurisdictional inquiry to MDLEA cases in which foreign relations issues would most likely arise—*viz.*, cases involving non-United States "vessels subject to the jurisdiction of the United States," as opposed to cases involving "vessels of the United States" or defendants who are United States citizens or resident aliens. *See id.* §§ 70503(a), 70504(a). In the latter situations, the determination whether the vessel is "of the United States" or the defendant is a United States citizen or resident alien would go to an element of the offense, and so would be subject to waiver by a defendant who enters an unconditional guilty plea.

The government, relying on the First Circuit's divided decision in *Gonzalez*, argues that the term "jurisdiction" in § 70504(a) refers to the legislative "jurisdiction" of Congress in the sense of a so-called "jurisdictional element," not to the subject-matter jurisdiction of the federal courts. The government observes that § 70504(a) speaks in terms of the "jurisdiction of the United States," rather than—as with other statutes that define subject-matter jurisdiction—the jurisdiction of the "district courts." *E.g.*, 18 U.S.C. § 3231; 28 U.S.C. §§ 1331, 1332. For several reasons, we are unpersuaded by the government's argument.

First, the government fails to account for the strong reasons to understand § 70504(a) to establish a requirement of subject-matter jurisdiction as a means of protecting the interests of foreign sovereigns. Construing § 70504(a) only to

pertain to Congress's legislative "jurisdiction," for the reasons explained, would potentially give rise to foreign relations concerns in the application of the MDLEA. It is entirely understandable that Congress would define the subject-matter jurisdiction of district courts in a manner sensitive to the interests of another sovereign. *Cf.* 18 U.S.C. § 1152 (establishing an exception from general jurisdiction over federal crimes in certain circumstances for "offenses committed by one Indian against . . . another Indian" or by an Indian "in the Indian country who has been punished by the local law of the tribe"); 28 U.S.C. § 1604 (Foreign Sovereign Immunities Act).

In addition, when Congress establishes a so-called "jurisdictional element" addressing the reach of its legislative authority, Congress does not use the term "jurisdiction" in the statute. *See, e.g.*, 18 U.S.C. § 656 (criminalizing certain conduct by an individual who is "an officer, director, agent or employee of, or connected in any capacity with any Federal Reserve bank"); *id.* § 922(q)(2)(A) (making it "unlawful for any individual knowingly to possess a firearm that has moved in or that otherwise affects interstate or foreign commerce at a place that the individual knows . . . is a school zone"). Rather, "jurisdictional element" is a "colloquialism" used by "[l]awyers and judges." *Hugi v. United States*, 164 F.3d 378, 380 (7th Cir. 1999).

Statutes that establish "jurisdictional elements" not only contain no use of the term "jurisdiction," but, consistent with the description "jurisdictional *element*," treat the relevant condition as an element of the offense to be found by a jury. In that sense, "proof of [a jurisdictional element] is no different from proof of any other element of a federal crime." *Id.* at 381. By contrast, § 70504(a) specifically provides that the "jurisdiction of the United States with respect to a vessel" is

*not* an element of the offense and is to be determined by the court rather than by the jury, signifying that Congress did not intend to establish a "jurisdictional element." To be sure, allocation of the issue to the court rather than the jury gives rise to a possible Sixth Amendment claim (regardless of whether the issue goes to subject-matter jurisdiction), *see Gonzalez*, 311 F.3d at 444, but appellants raise no such claim here.

Additionally, a provision's "placement within" the statute can "indicat[e] that Congress wanted that provision to be treated as having jurisdictional attributes." *Henderson*, 131 S. Ct. at 1205; *see also Reed Elsevier*, 559 U.S. at 164-65; *Arbaugh*, 546 U.S. at 514-15. The placement of § 70504(a) reinforces that it pertains to the subject-matter jurisdiction of district courts rather than the legislative "jurisdiction" of Congress. Congress situated § 70504(a) within a provision addressing, per its title, "Jurisdiction and venue." 46 U.S.C. § 70504; *see INS v. Nat'l Cent. for Immigrants' Rights, Inc.*, 502 U.S. 183, 189 (1991) ("[T]he title of a statue or section can aid in resolving an ambiguity in the legislation's text."). The subject of "venue," addressed in § 70504(b), by nature speaks to the authority of a district court to hear a case. The subject of "jurisdiction," addressed in § 70504(a), is best understood likewise to address the authority of district courts to hear a case rather than Congress's own authority to regulate. In other instances in which Congress uses the term "jurisdiction and venue," the statute indisputably pertains to the jurisdiction of the courts. *See, e.g.*, 7 U.S.C. § 941; 29 U.S.C. § 1370; 40 U.S.C. § 123. Congress did the same in § 70504.

That is particularly evident in light of the history of § 70504. Before 2006, the language of § 70504(a) addressing jurisdiction and the language of § 70504(b) addressing venue were combined in one statutory subsection. *See* 46 App. U.S.C. § 1903(f) (2000). The provision read:

> Any person who violates this section shall be tried in the United States district court at the point of entry where that person enters the United States, or in the United States District Court of the District of Columbia. Jurisdiction of the United States with respect to vessels subject to this chapter is not an element of any offense. All jurisdictional issues arising under this chapter are preliminary questions of law to be determined solely by the trial judge.

*Id*. That entire provision, including the references to "jurisdiction," self-evidently concerned the authority of district courts, not the legislative authority of Congress.

In 2006, Congress relocated the MDLEA, and in doing so separated what was § 1903(f) into two neighboring subsections within the new § 70504, without any material change to the text. There is no reason to conclude that Congress, despite making no relevant adjustment to the text, meant to fundamentally transform the "jurisdictional" portion so that it now speaks to legislative rather than judicial authority. *See* H.R. Rep. 109-170, at 2 (2005) ("The purpose of H.R. 1442 is to complete the codification of title 46 . . . . It does so by reorganizing and restating the laws currently in the appendix to title 46. It codifies existing law rather than creating new law."). Rather, both halves of a provision addressing "jurisdiction and venue" continue to pertain to the authority of courts.

For those reasons, we conclude that § 70504(a) relates to the subject-matter jurisdiction of the district courts. Appellants' entry of unconditional guilty pleas thus could not waive the question whether the pertinent vessels are "subject to

the jurisdiction of the United States" within the meaning of the MDLEA.

2.

Proceeding to the merits, we reject appellants' argument that the vessels described in their stipulated facts were not "subject to the jurisdiction of the United States." The district court concluded that appellants' charged conduct involved "vessels without nationality," one type of vessel "subject to the jurisdiction of the United States." 46 U.S.C. § 70502(c)(1)(A). While we review de novo the district court's legal conclusion that the vessels in this case meet the statutory definition, we review any predicate factual determinations for clear error. *See Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992). We find no error—clear or otherwise—in the district court's decision.

There is no basis for overturning the district court's finding that appellants were both involved with "vessels without nationality." In their factual stipulations, each appellant acknowledged that he "was a co-conspirator in a drug trafficking organization which, from in or about 2006 and continuing until August 25, 2010, transported narcotics from Colombia on *stateless* go-fast vessels through international waters to other countries." J.A. 93, 128 (emphasis added). Appellants do not dispute that "stateless" vessels are vessels "without nationality."

Additionally, appellants each gave a "particular" example of the conspiracy's plans to transport drugs from Colombia on board "stateless" vessels. J.A. 94, 129. Munoz Miranda stipulated that, "[i]n particular," he and others "planned to transport more than 500 grams of cocaine on board a go-fast boat leaving from the north coast of Colombia" in November 2006, and further stipulated that the "boat was not registered in

Colombia and did not fly a Colombian flag." J.A. 93-94. Valderrama Carvajal identified the same example, and also described an additional example that involved a "go-fast boat" that "did not fly a flag, was not registered in Colombia or any other nation, and contained no registration identification." J.A. 128-29. "No one in the crew, including the captain, claimed that the go-fast boat was registered in Colombia." J.A. 129. Those stipulations gave the district court an ample basis for its determination that appellants' conspiratorial acts involved "vessels without nationality."

Appellants contend that neither of the vessels highlighted as examples in their factual stipulations can count as "vessels without nationality" because both boats were in Colombian waters when captured. According to appellants, a vessel is "without nationality" only when on the high seas, and it ceases to qualify as stateless when within any nation's—here, Colombia's—territorial waters. The district court correctly rejected that argument. The statute describes "vessels without nationality" in a manner that makes no reference to the situs of a vessel when seized. *See* 46 U.S.C. § 70502(d)(1). Instead, the statute contains three nonexclusive examples of "vessels without nationality," each of which turns on the "registry" of the vessel. *Id.* § 70502(d)(1)(A)-(C). That is consistent with the general understanding of a stateless vessel under international law. *See United States v. Rosero*, 42 F.3d 166, 171 (3d Cir. 1994) ("Under international law, '[s]hips have the nationality of the State whose flag they are entitled to fly.'") (quoting Convention on the High Seas of 1958, 13 U.S.T. 2312, T.I.A.S. No. 5200, art. 5(1)). If a vessel in fact ventured in and out of statelessness depending on where it happened to be located when seized, the statute would create a perverse incentive for vessels to race to a foreign nation's territorial waters before submitting to interdiction. Congress established no such regime under the MDLEA, and the vessels

in this case thus qualify as "without nationality" even though they were located in Colombian waters when seized.

\* \* \* \* \*

For the foregoing reasons, we affirm the district court's denial of appellants' motions to dismiss and for reconsideration. We also affirm the district court's acceptance of appellants' guilty pleas.

*So ordered.*