[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 20-11293
Non-Argument Calendar
_____

D.C. Docket No. 6:20-cv-00123-RBD-LRH


ALAN PARSONS,
an individual,
APPERTAINING, LLC,
a California limited liability company,

                                          Plaintiffs-Appellees,

versus

JOHN REGNA,
an entity of unknown form,
d.b.a. John Regna Artist Management,
WORLDWIDE ENTERTAINMENT ASSOCIATES OF AMERICA, INC.,
a New Jersey Corporation,

                                          Defendants-Appellants.


_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(March 17, 2021)

Before MARTIN, BRANCH, and LUCK, Circuit Judges.

PER CURIAM:

John Regna and World Entertainment Associates of America, Inc. (WEAA) appeal from an order of the U.S. District Court for the Middle District of Florida granting Alan Parsons's and Appertaining LLC's motion for a preliminary injunction in this trademark infringement suit.[1]  Parsons sued Regna for federal and common law trademark infringement and moved for a preliminary injunction to prevent Regna from using certain marks related to The Alan Parsons Project, a musical group he co-founded.[2]  The district court granted Parsons's motion and preliminarily enjoined Regna from using the marks.

Regna argues that the district court abused its discretion in granting Parsons's motion because: (1) it lacked subject-matter jurisdiction over Parsons's claims, (2) Parsons failed to establish statutory standing, and (3) Regna was entitled to a nominative fair use defense.  Parsons, in turn, argues that the district court's ruling should be affirmed, and requests that we deem this case an

---

[1]  Like the district court, we will refer to Alan Parsons and Appertaining LLC collectively as "Parsons," and John Regna and WEAA collectively as "Regna."  If we need to identify Alan Parsons or John Regna individually, we will use their full name.

[2]  Parsons also sued Regna for false designation of origin, federal trademark dilution, state trademark dilution and injury to reputation, common law unfair competition, infringement of the statutory right of publicity, misappropriation of the common law right of publicity, breach of fiduciary duty, breach of contract, and conversion.  We only address Parsons's federal and common law trademark infringement claims because Parsons is entitled to preliminary injunctive relief on those claims.

"exceptional case" so that he may recover attorney fees under the Lanham Act as the prevailing party. Because the district court had subject-matter jurisdiction and did not abuse its discretion in granting Parsons's motion, we affirm the preliminary injunction. We deny, however, Parsons's request to deem this case an "exceptional case" for purposes of recovering attorney fees because there is still pending litigation over the merits of the underlying suit.

## I.    Background

### A.    The Alan Parsons Project

Alan Parsons founded The Alan Parsons Project, a progressive-rock band, with Eric Woolfson in the 1970's. Between 1976 and 1987, The Alan Parsons Project recorded seven albums that were awarded "Platinum" or "Gold" status,[3] as well as seventeen Billboard Top 100 singles. For his work, Alan Parsons was nominated for thirteen Grammy Awards, and won the Grammy Award for Best Immersive Audio Album in 2019. Woolfson died in 2009.

Parsons claims that he and Woolfson "were the only two members of The Alan Parsons Project, ever." Parsons served as the band's "engineer, producer, and keyboardist," and Woolfson served as the band's "pianist, singer-songwriter, and lyricist." The duo brought in "singers and session musicians . . . as needed to

---

[3] A "Platinum" album is an album that has sold more than one million copies. A "Gold" album is an album that has sold more than 500,000 copies.

3

complete the[ir] musical vision." Over the course of the pair's collaboration, "more than 500 musicians and vocalists performed on The Alan Parsons Project's . . . albums." Parsons and Woolfson "selected and directed the musicians on a day-by-day or song-by-song basis" and the musicians "acted only pursuant to [their] direction, supervision, and control." These musicians "were all paid on a session-by-session, work for hire basis, and were never considered, or credited as, members of the group."[4]

The Alan Parsons Project's only live performance was a three-show concert series in Antwerp, Belgium, in 1990. Parsons and Woolfson "selected and hired the musicians" and "directed, supervised, and controlled [the musicians] throughout pre-show rehearsal as well as the show itself." In 1994, Parsons began touring, without Woolfson, under the name "The Alan Parsons Live Project." Since then, Parsons has toured throughout the United States and the rest of the world. For these concerts, Parsons "select[s], hire[s], direct[s], supervise[s], and control[s]" the musicians who accompany him.

Parsons has registered several trademarks in connection with his musical activities. These marks include "ALAN PARSONS" for audio and video recordings and live musical performances, and "ALAN PARSONS LIVE PROJECT" for live performance by a musical group. He also claims common law

---

[4] We will refer to these musicians as "session musicians."

4

rights in the mark "THE ALAN PARSONS PROJECT," since at least 1976, when

The Alan Parsons Project released its first album.[5]

B.    Alan Parsons's Relationship with John Regna

John Regna is a concert promoter based in Florida.  He also serves as the

Vice President, Secretary and Treasurer of WEAA.  In 2009, Regna began

soliciting Parsons, seeking to promote The Alan Parsons Live Project.  Parsons and

Regna ultimately formed a contract, in which Regna promised to solicit and obtain

opportunities for Parsons to engage in live performances.

During their relationship, Regna made numerous statements about The Alan

Parsons Project that are relevant to this case.  In one e-mail, Regna wrote that

"Alan Parsons and Eric Woolfson were the sole members of the Alan Parsons

Project.  By virtue of that, there cannot be any ex-members of the Alan Parsons

Project other than Alan Parsons and Eric Woolfson."  He also wrote that for any

other musician "[t]o say they are 'ex-members' either editorially or in an attempt to

market their services or live performances, or in a band name or subtitle, would be

incorrect and not accurate."

Over time, the parties' relationship deteriorated, and in April 2018, Parsons

terminated their contract.  In February 2019, Parsons was alerted to a Facebook

---

[5]  Like the district court, we will refer to the marks "ALAN PARSONS," "THE ALAN PARSONS LIVE PROJECT," and "THE ALAN PARSONS PROJECT" collectively as the "Parsons Marks."

advertisement for a band called "The Original Alan Parsons Band The Project –

The Men Who Made The Records."  Upon investigation, Parsons discovered that

the band was affiliated with WEAA.  Parsons and his attorneys sent Regna a cease-

and-desist letter, but Regna denied being involved with the band.  Less than a week

later, Regna sent Parsons a letter stating that he had accepted the role of CEO and

manager of an entity called "The Project Band Ltd (UK)" ("The Project Band").

The Project Band was comprised of former session musicians for The Alan

Parsons Project, including Lenny Zakatek (who sang twelve songs on eight

albums), Stuart Elliott (who played drums on eight albums), Richard Cottle (who

played synthesizers and saxophone on three albums), and Lawrence Cottle (who

played bass guitar on one album).[6]  None of these musicians appeared on The Alan

Parsons Project's first album.

In April 2019, Parsons discovered that The Project Band had scheduled a

performance in Barcelona, Spain, under the name "The Original Alan Parsons

Project Band."  He sent cease-and-desist letters to The Project Band, and when that

failed, sought a preliminary injunction in Spanish court to stop the concert.  A

Spanish court initially granted an injunction but subsequently stayed it, allowing

---

[6] Zakatek, Elliott, and Richard Cottle also performed at the Antwerp concerts.  The Project Band also included David Bainbridge, Sam Blue, and Andrew Powell.  Powell was the conductor at the Antwerp concerts and Blue was one of the vocalists.  None of these musicians performed on any of The Alan Parsons Project's albums.

the concert to proceed as planned.  After the concert, Parsons received an e-mail complaint from a fan who was confused and believed that Parsons was responsible for the show.

In September 2019, Parsons discovered advertisements promoting "The Project – Original VOICE – Original MUSICIANS of The Alan Parsons Project Band – 50 Countries in 50 Months – The Reunion 30 Years In The Making – The Hits & Nothing But The Hits!"  He also discovered promotional videos on The Project Band's YouTube channel for "The PROJECT – the 50/50 World Tour – Original Voice Original Musicians of the Alan Parsons Project Band."  Further, Parsons's agent in New York received an e-mail from Regna, advertising The Project Band and soliciting bookings:

> I am writing today about my client, **THE PROJECT Original VOICE, Original MUSICIANS of The Alan Parsons Project Band.**  If you are a fan of The Alan Parsons Project recordings between 1975 and 1990, you may like to know that **THE PROJECT** is the most pure classic rock band, of their genre, today - having 5 of the 7 original band members.  Lead Vocalist LENNY ZAKATEK revisits his original recorded performances . . . .  We are now booking January 2020 through March 2022 for shows in theaters, festivals, with symphony orchestras and for private functions.

Parsons sued Regna in California for trademark infringement, but that action was dismissed for lack of personal jurisdiction.  He then sued Regna in Florida and sought a preliminary injunction to prevent Regna from using the Parsons Marks.  Regna moved to dismiss the case for lack of subject matter jurisdiction, but the

7

district court denied his motion.  Regna then responded to Parsons's motion for a preliminary injunction, arguing that he was entitled to a nominative fair use defense and that Parsons lacked standing to sue for infringement of the Parsons Marks.[7]  The district court found that "[t]he band names and descriptions used by Regna [we]re carefully created to draw a close, unmistakable association with The Alan Parsons Project to a degree unwarranted by the historical record" and were "deceptive and misleading."  Accordingly, it rejected Regna's arguments and granted Parsons's motion for a preliminary injunction.  Regna timely appealed.

## II.    Jurisdiction

Regna argues that the district court lacked subject-matter jurisdiction to hear this case because Parsons has not satisfied the requirements for the extraterritorial application of the Lanham Act.[8]  He contends that, under *Steele v. Bulova Watch Co.*, 344 U.S. 280, 285–87 (1952), and *International Cafe, S.A.L. v. Hard Rock Cafe International (U.S.A.), Inc.*, 252 F.3d 1274, 1278 (11th Cir. 2001), Parsons was required to demonstrate that Regna's infringing activities "had substantial

---

[7]  Regna also argued that Parsons failed to establish an irreparable injury, that the balance of the hardships weighed in favor of denying Parsons's motion, and that a preliminary injunction would not serve the public interest.

[8]  Subject-matter jurisdiction is the court's "statutory or constitutional power to adjudicate the case." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (emphasis omitted).  A federal court must have subject-matter jurisdiction to "proceed at all in any cause." *Id*. at 94 (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868)).  That requirement "cannot be forfeited or waived and should be considered when fairly in doubt." *Ashcroft v. Iqbal*, 556 U.S. 662, 671 (2009).

8

effects in the United States," but that Parsons failed to do so because Regna's infringing activities were limited to "[a] single concert in Barcelona" that did not have "an effect on United States commerce, let alone a 'substantial' one." "We review questions of subject-matter jurisdiction *de novo*." *City of Miami Gardens v. Wells Fargo & Co.*, 931 F.3d 1274, 1282 (11th Cir. 2019).[9]

As the district court noted, "here there are two U.S. defendants (Regna and WEAA) who are allegedly violating U.S. trademarks by: running their business in the U.S., soliciting former musicians to play in an 'imposter band' in the U.S.,

---

[9] "The extraterritorial reach of a statute ordinarily presents a merits question, not a jurisdictional question." *United States v. Miranda*, 780 F.3d 1185, 1191 (D.C. Cir. 2015); *see Litecubes, LLC v. N. Light Prod., Inc.*, 523 F.3d 1353, 1363 (Fed. Cir. 2008) ("[A] limitation on the extraterritorial scope of a statute is no different than any other element of a claim which must be established before relief can be granted under a particular statute."). In *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247, 253–54 (2010), the Supreme Court held that the extraterritorial reach of the Securities Exchange Act of 1934 was not a jurisdictional question. Other courts have come to the same conclusion when addressing the extraterritorial reach of other statutes. *See Miranda*, 780 F.3d at 1191 (Maritime Drug Law Enforcement Act); *Lotes Co. v. Hon Hai Precision Indus*, 753 F.3d 395, 405 (2d Cir. 2014) (Foreign Trade Antitrust Improvements Act); *Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845, 852 (7th Cir. 2012) (same); *Norex Petroleum Ltd. v. Access Indus., Inc.*, 631 F.3d 29, 32 (2d Cir. 2010) (Racketeer Influenced and Corrupt Organizations Act); *Litecubes*, 523 F.3d at 1366 (Patent Act and Copyright Act).

Although some courts have held that "the extraterritorial reach of the Lanham Act is a merits question that does not implicate federal courts' subject-matter jurisdiction," *Trader Joe's Co. v. Hallatt*, 835 F.3d 960, 968 (9th Cir. 2016); *cf. Litecubes*, 523 F.3d at 1366 ("[W]hether the allegedly infringing act happened in the United States is an element of the claim for patent infringement, not a prerequisite for subject[-]matter jurisdiction."), we are bound by language in *Bulova Watch* and *International Cafe* that described the extraterritorial reach of the Lanham Act as a jurisdictional question. *But see Santoyo v. U.S. Atty. Gen.*, 713 F.3d 1357, 1359–60 (11th Cir. 2013) (*en banc*) (conceding that we have used the word "jurisdiction" in the past "to convey many, too many, meanings" (quotation omitted)); *Williams v. Warden, Fed. Bureau of Prisons*, 713 F.3d 1332, 1338 (11th Cir. 2013) ("The Supreme Court . . . has taken an active role in more precisely delineating what statutory prerequisites to suit qualify as jurisdictional—a boundary not always neatly policed in the past.")

maintaining infringing internet domains in the U.S., and drafting and sending emails from the U.S[.] to solicit infringing bookings." These alleged activities occurred within the United States and satisfy the *Bulova Watch* "substantial effects" test. *See Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (holding that the "substantial effects" test was met when the defendants included U.S. corporations and residents and counterfeit jeans were stored in and shipped through the United States); *Babbitt Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1179–80 (11th Cir. 1994) (holding that the "substantial effects" test was met when telephones were shipped through the United States and the primary defendant was a U.S. corporation who negotiated sales from a Florida office); *cf. Shatel Corp. v. Mao Ta Lumber & Yacht Corp.*, 697 F.2d 1352, 1356 (11th Cir. 1983) ("Advertising that affects interstate commerce and solicitation of sales across state lines or between citizens of the United States and citizens and subjects of a foreign nation is . . . commerce within the meaning of the Lanham Act."). Because Parsons adequately alleged that Regna's infringing activities had substantial effects in the United States, the district court had subject-matter jurisdiction to hear this case.

### III.    Parsons's Motion for a Preliminary Injunction

To grant Parsons's motion for a preliminary injunction, the district court was required to find that Parsons established: (1) a substantial likelihood of success on

the merits of his claim; (2) an irreparable injury unless the injunction was granted; (3) that the harm from the threatened injury outweighed the harm the injunction would cause Regna; and (4) that the injunction would not be adverse to the public interest.  *Gonzalez v. Governor of Ga.*, 978 F.3d 1266, 1270–71 (11th Cir. 2020).  The district court found that "Parsons . . . met his burden in establishing all four elements."

On appeal, Regna challenges only the district court's conclusion that Parsons established a substantial likelihood of success on his claim of trademark infringement.[10]  He argues that Parsons lacks standing to sue for infringement of the Parsons Marks and that he is entitled to a nominative fair use defense.  We review the district court's decision "for abuse of discretion, reviewing any underlying legal conclusions *de novo* and any findings of fact for clear error."  *Gonzalez*, 978 F.3d at 1270.  We note that appellate review of the grant of a preliminary injunction is deferential and exceedingly narrow.  *See Bellsouth Telecomms., Inc. v. MCIMetro Access Transmission Servs., LLC*, 425 F.3d 964, 968 (11th Cir. 2005).  "The district court's decision will not be reversed unless there is a *clear* abuse of discretion."  *Id.* (quotation omitted and emphasis added).

A.    Statutory Standing

---

[10]  Accordingly, we do not address the district court's conclusions that "Parsons has shown irreparable harm," "[t]he balance of the hardships favors Parsons," or "[g]ranting an injunction serves the public's interest."

11

To prevail on his claim for infringement of the Parsons Marks, Parsons must prove that he has statutory standing—that is, he must prove that he has enforceable trademark rights in the marks.[11] *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 647 (11th Cir. 2007); *see* 15 U.S.C. § 1114(1). The district court found that "[b]etween his registered trademarks and his common law rights, Parsons has established he is likely to succeed" in proving that he has enforceable trademark rights in the Parsons Marks. Regna argues that Parsons failed to establish a likelihood of success of proving that he has enforceable trademark rights in the Parsons Marks. We disagree.

Under the Lanham Act, the "registrant" of a trademark has standing to assert a claim for trademark infringement. *See Fla. VirtualSchool v. K12, Inc.*, 735 F.3d 1271, 1273 (11th Cir. 2013); 15 U.S.C. § 1114(1) (providing that a trademark infringer "shall be liable in a civil action *by the registrant*" (emphasis added)). Because the district court did not commit clear error in finding that "Parsons possesses federally registered trademarks in the mark 'ALAN PARSONS' and 'THE ALAN PARSONS LIVE PROJECT' for live musical performances and 'ALAN PARSONS' for audio and video recordings and merchandise," we conclude that it did not abuse its discretion in finding, at this stage of the

---

[11] A trademark plaintiff must also prove "that the defendant made unauthorized use of [the marks] 'such that consumers were likely to confuse the two.'" *Custom Mfg. & Eng'g, Inc.*, 508 F.3d at 647 (quotation omitted).

12

proceedings, that Parsons has enforceable trademark rights in the mark "ALAN PARSONS" and "THE ALAN PARSONS LIVE PROJECT" for live musical performances and "ALAN PARSONS" for audio and video recordings and merchandise.

Similarly, widespread and popular use of a mark can be sufficient to establish enforceable common law rights in the mark. *See Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1195–96 (11th Cir. 2001) (concluding that a plaintiff established common law rights to a mark where use of the mark was widespread and members of the public associated the mark with the plaintiff). Because the district court did not commit clear error in finding that Parsons has used the unregistered mark "'THE ALAN PARSONS PROJECT' . . . since 1976 with the Alan Parsons Project's first album, *Tales of Mystery and Imagination*— and the Alan Parsons Project has earned multiple platinum albums, seventeen Billboard Top 100 singles, and a Grammy," we conclude that it did not abuse its discretion in finding, at this stage of the proceedings, that Parsons has enforceable trademark rights in the unregistered mark "THE ALAN PARSONS PROJECT."

Finally, Regna argues that Parsons assigned away his rights to enforce the marks in an agreement with Woolfsongs, Ltd., Eric Woolfson's recording company (the "*Arista* agreement"). Upon review of the agreement, we conclude that the district court did not abuse its discretion in finding that "the agreement is limited to

13

Parsons' production of phonographic records for Arista," a record company, and that "the agreement is not evidence Parsons has no rights to the Parsons Marks," because this dispute is about live concerts, not phonographic records.[12] Accordingly, the district court did not abuse its discretion in concluding that the *Arista* agreement does not affect Parsons's ability to establish that he has enforceable trademark rights in the Parsons Marks.

B.    Nominative Fair Use Defense

Regna argues that he is entitled to a nominative fair use defense because his use of the Parsons Marks was limited to references to the historical associations between members of The Project Band and The Alan Parsons Project. Nominative fair use occurs when "the defendant has used the plaintiff's mark to describe the *plaintiff's* product for the purposes of . . . comparison to the defendant's product." *Commodores Entm't Corp. v. McClary*, 314 F. Supp. 3d 1246, 1249 (M.D. Fla. 2018) (quoting *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1150 (9th Cir. 2002)). The district court found that Regna failed to establish an entitlement to a nominative fair use defense.

---

[12] *See* M.D. Fla. Doc. 38-1 at 32 ("All rights in the Arista Recordings and reproductions made therefrom together with the performances embodied therein shall as between the parties hereto be and remain entirely the absolute property of [Woolfsongs Limited] free of any claims by [Alan Parsons] or any person deriving title from [him] and in so far as is necessary the said rights are hereby assigned to [Woolfsongs Limited]."

14

We have not yet addressed whether nominative fair use is an affirmative defense to trademark infringement claims under the Lanham Act.  *See generally Am. Soc'y for Testing & Materials, v. Public.Resource.Org, Inc.*, 896 F.3d 437, 457 (D.C. Cir. 2018) ("Courts of appeals have disagreed about how exactly to evaluate nominative fair use claims.").  *Compare Century 21 Real Estate Corp. v. Lendingtree, Inc.*, 425 F.3d 211, 222 (3d Cir. 2005), *and New Kids on the Block v. News Am. Pub., Inc.*, 971 F.2d 302, 308 (9th Cir. 1992), *with Int'l Info. Sys. Sec. Certification Consortium, Inc. v. Sec. Univ., LLC*, 823 F.3d 153, 167–68 (2d Cir. 2016).  But even under Regna's proposed framework for nominative fair use, he failed to establish an entitlement to such a defense.[13]

Regna proposes—and the district court applied—the Ninth Circuit's test for nominative fair use.  Under that test, a defendant is entitled to a defense of nominative fair use if it can establish that:

> (1) [p]laintiff's product or service is not readily identifiable without use of the trademark; (2) [d]efendants used only so much of the mark as is reasonably necessary to identify the plaintiff's product or services; and (3) the user of the mark does nothing that would, in

---

[13] Like the Fourth Circuit in *Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 155 (4th Cir. 2012), "[w]e hasten to add that we are not adopting a position about the viability of the nominative fair-use doctrine as a defense to trademark infringement or whether this doctrine should formally alter our likelihood-of-confusion test in some way.  That question has not been presented here and we leave it for another day."  We do note, however, that nominative fair use is not an affirmative defense set forth in the Lanham Act, *see* 15 U.S.C. § 1115(b), and that the considerations underlying nominative fair use appear to be more properly considered, if at all, as part of the likelihood-of-confusion analysis, *see Int'l Info. Sys. Sec. Certification Consortium*, 823 F.3d at 167–68.

15

conjunction with the mark, suggest sponsorship or endorsement by the trademark holder.

*Commodores*, 314 F. Supp. 3d at 1250 (citing *Cairns*, 292 F.3d at 1151).  Regna failed to satisfy that test because he failed to establish that he "d[id] nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder."  As the district court noted, "[t]he band names and descriptions used by Regna are carefully crafted to draw a close, unmistakable association with The Alan Parsons Project to a degree unwarranted by the historical record."

Regna quibbles with the district court's conclusion that The Project Band's names and descriptions are not truthful.  He maintains that The Project Band only claimed to be some of the "original musicians" of The Alan Parsons Project, not the "original members," and that the district court erroneously conflated the two. But this distinction makes little difference.  The district court did not abuse its discretion in relying on John Regna's own statements to conclude that the "originality claim[]" itself was what was untruthful.  These statements included:

- "Alan Parsons and Eric Woolfson were the sole members of the Alan Parsons Project.  By virtue of that, there cannot be any ex-members of the Alan Parsons Project other than Alan Parsons and Eric Woolfson."

- "All singers and musicians other than Alan Parsons and Eric Woolfson, on any Alan Parsons Project recordings, were engaged on a work-for-hire basis."

- "[A]ll work-for-hire musicians and singers are prohibited from saying that they are an ex-member of the Alan Parsons Project (a recording franchise), or the Alan Parsons Live Project (a touring and recording franchise)."

16

- "To say they are 'ex-members' or 'original' members either editorially or in an attempt to market their services or live performances, or in a band name or subtitle, would be incorrect and not accurate."

Given that "[t]he Alan Parsons Project hired over 500 musicians and vocalists to perform on ten albums—none of whom were ever considered or credited as 'members of the group,'" the district court did not abuse its discretion in concluding that The Project Band's originality claim was "deceptive and misleading." Accordingly, even under Regna's proposed framework for nominative fair use, he would not be entitled to such a defense.[14]

## IV.    Attorney Fees

Parsons requests that we deem this case an "exceptional case" so that he may recover attorney fees for this appeal. *See* 15 U.S.C. § 1117(a) ("The court in exceptional cases may award reasonable attorney fees to the prevailing party."). An "exceptional case" is "simply one that stands out from others with respect to the substantive strength of the party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Tobinick v. Novella*, 884 F.3d 1110, 1117–18 (11th Cir. 2018)

---

[14] Regna also argues that the district court failed to perform a proper nominative fair use analysis and instead relied only on his alleged bad faith. Because we independently conclude that Regna failed to establish an entitlement to a nominative fair use defense, we do not address this argument. *See Long v. Comm'r of IRS*, 772 F.3d 670, 675 (11th Cir. 2014) ("[W]e may affirm on any ground that finds support in the record.").

(quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)).  District courts are best equipped to "determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances."  *Octane Fitness*, 572 U.S. at 554.  In light of the preliminary stage of this litigation, we decline to determine in the first instance whether this case is an "exceptional" one, and we leave that determination to the district court.

### V.    Conclusion

For these reasons, we affirm the district court's order granting Parsons's motion for a preliminary injunction.

**AFFIRMED.**