**Victoria Marie WESTON and Marie Beatrice Weston, Appellees,**

v.

**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, Appellant.**

Nos. 95–7055, 95–7098.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 23, 1996.

Decided March 15, 1996.

---

David R. Keyser, Takoma Park, MD, argued the cause for appellant, with whom Robert L. Polk and Robert J. Kniaz, Washington, DC, were on the brief.

Jay B. Dorsey, III, Washington, DC, argued the cause for appellees.

Edward J. Longosz, II and Adam W. Smith, Fairfax, VA, were on the brief for amicus curiae Schindler Elevator Corporation.

Before: SILBERMAN, BUCKLEY and ROGERS, Circuit Judges.

ROGERS, Circuit Judge:

The Washington Metropolitan Area Transit Authority ("WMATA") appeals from a judgment following a jury verdict finding that WMATA was negligent *per se* in the inspection and maintenance of its escalators, which proximately caused a hand injury to the two-year old plaintiff. WMATA makes seven claims of error on appeal, but we need only address its contention that the district court erred in instructing the jury on the meaning of § 902.5 of the D.C. Elevator Code. Although framed in terms of an error of interpretation, WMATA's contention necessarily presents the court with the question whether the jury was instructed on the correct law. Because the District of Columbia regulation, violation of which the district court instructed the jury was negligence *per se*, had been repealed at the time of the accident, the instruction was erroneous. Accordingly, we reverse and remand the case to the district court with instructions to enter judgment for WMATA, in accordance with the special verdict form finding that WMATA was not negligent.

## I.

The accident took place on July 11, 1990, at the Minnesota Avenue Metro station. Marie Weston was riding up an escalator, with her seven-year-old son Alphonso on one side and her two-year-old daughter Victoria on the other. When Alphonso broke away from

his mother and distracted her attention, Victoria somehow caught her right hand in the gap between the escalator steps and the "skirt" (the part below the balustrade) on the side. Victoria's hand injury required extensive surgery, and she retains some permanent disability. Marie Weston incurred medical expenses of $17,922.61 on behalf of her daughter.

Marie and Victoria Weston[1] filed suit against WMATA in federal district court on July 27, 1992.[2] At trial, the plaintiffs' theory was that WMATA had failed properly to inspect and maintain the escalator in question. They called the mechanic from Schindler Elevator Corporation, the manufacturer and maintenance contractor, who conducted the routine bi-monthly maintenance on the escalator, Guilford J. Bobo. Bobo testified that he inspected according to, and ensured compliance with, the manufacturer's guidelines of a three-sixteenths inch gap on either side, using a gauge calibrated at three-sixteenths of an inch. Similarly, the District government inspector who inspected the escalator after Victoria's accident, Leonard Harris, testified that he conducted visual inspections according to his understanding of D.C. law, which required a three-sixteenths inch gap on either side, and that on July 12, 1990, the escalator was in compliance with D.C. law.[3] The WMATA inspector who inspected the escalator after the accident, Theodore Perper, testified that he conducted a visual inspection to check compliance with the Safety Code of the American National Standards Institute ("ANSI"), and found that the gap was "in compliance" without specifying the applicable standard. Another WMATA escalator inspector, Girard P. McGrail, testified that he made a visual examination to

see whether the gap complied with the ANSI Code, which he understood to require no more than three-eighths of an inch on either side. In an inspection that McGrail conducted on the same escalator on October 16, 1990, after a five-year-old girl suffered a hand entrapment injury similar to Victoria's, he found that the gap on the right side was greater than three-eighths of an inch.

◼ The plaintiffs also called an expert witness in escalator engineering, Leroy T. Gravette III, who testified that under the law that he believed was in force at the time of the accident in the District of Columbia, D.C.Mun.Regs. tit. 13A, § 902.5 (1984), the gap clearance was required to be no more than three-sixteenths of an inch on either side, and the sum of the two gap clearances was required to be no more than one-quarter of an inch.[4] Section 902.5 of the D.C.Elevator Code provided:

> The clearance on either side of the steps between the steps and the adjacent skirt guard shall not be more than three-sixteenths inch (³⁄₁₆″), and the sum of the clearances on both sides shall be not more than one-quarter inch (¼″); except where means are provided to cause the opening of the power circuit to the motor and brake if an object becomes caught between the step and the skirt panel as the step approaches the lower combplate.

Because WMATA's maintenance of the escalator so that the gap on either side was less than three-sixteenths of an inch was not inconsistent with the possibility that the sum of the gaps was more than one-quarter of an inch, the plaintiffs submitted that WMATA was negligent *per se*.

1. After both sides rested but before the jury instructions, Marie Weston withdrew as a plaintiff and assigned her right to recover medical expenses to Victoria. For purposes of clarity, our opinion will continue to refer to the "plaintiffs."

2. WMATA filed a third-party complaint against Schindler Elevator Corporation, the escalator's manufacturer and maintenance contractor, which the district court severed from the underlying action on October 3, 1994.

3. The inspection report that Harris filled out indicated that Harris may have mistakenly in-

spected a different escalator at the same Metro station.

4. The district court overruled WMATA's objection that Gravette was impermissibly delivering an opinion on matters of law. An expert witness may not deliver legal conclusions on domestic law, for legal principles are outside the witness' area of expertise under Federal Rule of Evidence 702. *Marx & Co. v. Diners' Club, Inc.*, 550 F.2d 505, 509–12 (2d Cir.1977). In light of our disposition, we need not decide whether Gravette was stating an opinion on the law.

The plaintiffs also presented evidence that WMATA's inspection and maintenance procedures were negligent. They sought to show that WMATA's escalator inspectors were assigned to too many escalators to do their job properly, were inadequately trained, conducted visual inspections rather than using tools for more precise measurements, and that WMATA lacked follow-up procedures to ensure that its contractor, Schindler, performed repair work as instructed. In addition, the plaintiffs introduced evidence of a prior accident on the same escalator to show that WMATA had notice of the dangerous condition of the escalator but had failed to warn the plaintiffs.[5]

After instructing the jury, but before the jury began its deliberations, the district court suggested the use of a special verdict form that separated "negligence *per se*" from "ordinary negligence." The plaintiffs agreed to this verdict form. The jury thereafter found that WMATA was not liable under the theory of "ordinary negligence" but was liable under the theory of "negligence *per se*" and awarded damages of $218,000. The judge denied WMATA's motion for judgment notwithstanding the verdict or a new trial, and WMATA appeals.

## II.

The jury verdict against WMATA, which was based on a theory of negligence *per se*, was predicated on § 902.5 of the D.C.Elevator Code, which was enacted in 1984. In the district court, and again on appeal, WMATA maintains that its inspection procedures were in compliance with § 902.5. WMATA urges a construction of § 902.5 that the requirement that the sum of the gaps not exceed one-quarter of an inch excluded escalators equipped with "means ... to cause the opening of the power circuit to the motor and brake if an object becomes caught between the step and the skirt panel as the step approaches the lower combplate" (known as a skirt switch). WMATA thus interprets § 902.5 to require a three-sixteenths of an inch gap on either side only for escalators equipped with a skirt switch—a safety device that will stop the escalator before an object

caught in the gap strikes the edge of the combplate. However, plaintiffs' expert, Gravette, testified that this exception applied only to descending escalators because it is determined by the "step approach[ing] the lower combplate." The district court interpreted the exception to apply only to "the area where the safety switched is located" and not to the middle of the escalator. We need not resolve this dispute over the proper interpretation of § 902.5 because § 902.5 had been repealed at the time of the accident.

■ In the district court, the parties stipulated that § 902.5 was the governing regulation. Even though WMATA operates over five hundred escalators throughout the Metro system, WMATA's counsel never clearly informed the district court that § 902.5 had been repealed and, as on appeal, attempted to harmonize that section and the ANSI Code. Thus, counsel misinformed the district court (contrary to WMATA's legal interest) that the D.C.Elevator Code was in effect at the time of the accident. As *amicus* Schindler points out, § 902.5 was repealed by the District of Columbia before Victoria's accident occurred. While parties may enter into stipulations of fact that are binding upon them unless they can show manifest injustice, " '[p]arties may not stipulate to the legal conclusions to be reached by the court.' " *TI Fed. Credit Union v. Delbonis,* 72 F.3d 921, 928 (1st Cir.1995) (quoting *Saviano v. Commissioner,* 765 F.2d 643, 645 (7th Cir.1985)). The court is authorized to determine what law was in effect at the time of Victoria's accident, and thereby avoid deciding a hypothetical case framed by the plaintiffs and WMATA. *United States Nat'l Bank v. Independent Ins. Agents,* 508 U.S. 439, 447, 113 S.Ct. 2173, 2179, 124 L.Ed.2d 402 (1993). Accordingly, we address whether § 902.5 remained in force at the time of the accident.

■ In 1987, the Council of the District of Columbia enacted the Construction Codes Approval and Amendments Act of 1986. D.C.Law 6–216, 34 D.C.Reg. 1072 (1987) (codified at D.C.CODE ANN. §§ 5–1301 to 5–1309 (1994)). The Act repealed "[t]he District of Columbia Elevator Act of 1977, effective No-

---

**5.** WMATA introduced evidence only on the extent of Victoria's injury.

vember 3, 1977 (D.C.Law 2–36; 13A DCMR Chapters 1–16)." D.C.Law 6–216, § 12(a)(4), 34 D.C.Reg. at 1102. Thus, the 1984 D.C.Elevator Code, D.C.Mun.Regs. tit. 13A, was no longer in force at the time of the accident.

In place of the Elevator Code, the District of Columbia substituted the 1984 *Basic/National Building Code* promulgated by the Building Officials and Code Administrators International ("BOCA"), its 1985 supplement, and the 1986 D.C.Supplement.[6] D.C.Code Ann. § 5–1301(3), (6)(A), (12)(A), (H). The BOCA Code in turn refers to the 1981 Safety Code for Elevators and Escalators jointly promulgated by ANSI and the American Society of Mechanical Engineers ("ASME") and its 1982 supplement. BOCA Basic/National Building Code § 2100.2, at 361 (9th ed. 1984); *id.* § 2117.1, at 378. To the same effect, the 1986 D.C.Supplement to the Construction Code, issued in June 1987, provides that "[a]ll escalators ... and their enclosures shall comply with the provisions of this section and ANSI A17.1." D.C.Mun.Regs. tit. 12A, § 2117.1 (1987). The ANSI Code provided that: "The clearance on each side of the steps between the step tread and the adjacent skirt panel shall be not more than ³⁄₁₆ in. (4.8 mm)." ASME/ANSI Code A17.1a § 802.3e, at 110 (Supp.1982). Consequently, § 902.5 had been repealed, and a simple three-sixteenths of an inch requirement was in effect at the time of the accident.

Confronted with the repeal of the D.C.Elevator Code, the plaintiffs maintain that the ANSI Code, as adopted by the 1984 BOCA Code and the 1986 D.C.Supplement, does not apply retroactively to existing structures.

They refer to § 103.1 of the 1986 D.C.Supplement, which provides that "[t]he legal use and occupancy of any building or structure existing on the effective date of the Construction Codes or for which it has been approved previously, may be continued without change." D.C.Mun.Regs. tit. 12A, § 103.1 (1987). But that provision deals only with construction, and the 1986 D.C.Supplement has separate provisions governing the scope of the Construction Codes for maintenance.[7] Moreover, the 1986 Act provides that the Construction Codes, as defined in § 5–1301(4), "shall control ... [m]atters concerning the ... maintenance of all buildings [and] structures ... in the District of Columbia and applies to existing or proposed buildings and structures." D.C.Code Ann. § 5–1303(a)(1).[8] Thus, we conclude that the ANSI code provided the three-sixteenths of an inch requirement that applied to the maintenance of escalators in the District at the time of the accident.

The plaintiffs' negligence *per se* theory rested on evidence that WMATA was not in compliance with the requirement in § 902.5 of the D.C.Elevator Code that the sum of the two gaps be not more than one-quarter of an inch. The plaintiffs' proposed jury instruction, which the district court adopted, concerned only § 902.5. Most of the plaintiffs' witnesses testified that WMATA was in compliance with the ANSI Code. Although plaintiffs' expert Gravette testified that WMATA's visual inspections were not in compliance with applicable requirements in the ANSI Code, the plaintiffs did not request a negligence *per se* instruction based on those code sections. Furthermore, the iso-

---

6. Effective November 27, 1992, pursuant to D.C.Code § 5–1309, the Mayor promulgated, subject to Council review, the 1990 BOCA code and the 1992 D.C.Supplement to replace the 1984 BOCA code and the 1986 D.C.Supplement. 39 D.C.Reg. 8665 (1992). These provisions were not yet in effect at the time of the accident.

7. The 1986 D.C.Supplement provides that:

All buildings and structures and all parts thereof, both existing and new, shall be maintained in a safe and sanitary condition. All service equipment, means of egress, devices and safeguards which are required by the Construction Codes in a building or structure, or

which were required by a previous statute in a building or structure, when erected, altered or repaired, shall be maintained in good working order.

D.C.Mun.Regs. tit. 12A, § 104.2 (1987).

8. At oral argument, plaintiffs' counsel invoked a provision in the 1986 Act that the 1977 Elevator Act would remain in effect after the date of repeal to govern the construction of buildings that had already received or filed for a construction permit or were under contract at the time of repeal. D.C.Law 6–216, § 12(b), 34 D.C.Reg. at 1102–03. That section applies only to construction standards, however, and not to maintenance standards.

lated testimony from WMATA inspector McGrail that he had inspected to a three-eighths of an inch standard, rather than to a three-sixteenths of an inch standard, cannot support a finding of negligence *per se* because the plaintiffs did not request, and the district court did not submit to the jury, the three-sixteenths of an inch standard from the ANSI Code as the legal standard of care.

Accordingly, we reverse the judgment insofar as it found WMATA negligent *per se* based on an error of law as to the governing standard of care.

## III.

The district court, in order to avoid the necessity for a new trial if this court reversed the judgment on negligence *per se* grounds, *cf. Nimetz v. Cappadona*, 596 A.2d 603, 607–08 (D.C.1991), submitted a special verdict form to the jury that separated what the district court labeled "ordinary negligence" from "negligence *per se.*" Under D.C. law, violation of a statute or regulation that is designed to protect the class of persons of whom the plaintiff is a member against the type of accident that occurred is negligence *per se.* *Otis Elevator Co. v. Tuerr*, 616 A.2d 1254, 1259 (D.C.1992). Although the element of negligence is estab- lished as a matter of law,[9] the jury must still decide whether the statute or regulation was violated and whether that violation was a proximate cause of the injury.[10] *Lyons v. Barrazotto*, 667 A.2d 314, 323 (D.C.1995). By contrast, for liability in the absence of the violation of an applicable statute or regulation, the jury must find that the defendant breached a duty of ordinary care and that the breach was a proximate cause of the injury.[11] Consequently, by finding for WMATA under the alternative theory of liability that did not depend on an applicable statute or regulation to establish WMATA's standard of care (the theory that the district court called "ordinary negligence"), the jury necessarily found that WMATA did not breach a duty of ordinary care. Although the verdict form might have been clearer if the elements of the two theories of negligence had been spelled out, particularly in light of the jury instructions on three theories of negligence ("ordinary negligence," negligence *per se* and *res ipsa loquitur* ), the plaintiffs did not make such a request or otherwise object to the form, and the district court correctly instructed the jury on the law of non-*per se* negligence, such that the verdict form was not error. *See* FED.R.CIV.P. 49(a); *cf. District of Columbia v. Banks*, 646 A.2d 972, 981–82 (D.C.1994). Nor do the

9. The district court properly rejected WMATA's request for an instruction that a violation of § 902.5 was mere evidence of negligence, rather than negligence *per se*, since WMATA produced no justification for an inability to comply with § 902.5. *See Perkinson v. Gilbert/Robinson, Inc.*, 821 F.2d 686, 692 & n. 9 (D.C.Cir.1987) (citing RESTATEMENT (SECOND) OF TORTS § 288A (1965)).

10. In some instances, defenses such as contributory negligence may also be questions for the jury. Although contributory negligence is unavailable in a negligence *per se* case if the defense would defeat the purpose of the statute or regulation, *Martin v. George Hyman Constr. Co.*, 395 A.2d 63, 68–69 (D.C.1978), the D.C.Court of Appeals has decided that the D.C.Elevator Code does not have the purpose "to protect members of the public from their own negligence." *District of Columbia v. Brown*, 589 A.2d 384, 386 (D.C.1991). In any event, in the instant case, the district court correctly ruled that the defense of contributory negligence could not go to the jury. If Marie Weston had been contributorily negligent, her negligence could not have been imputed to her daughter Victoria to bar Victoria's claim for damages, but it could have barred Marie's claim for medical expenses, even though Marie had assigned that claim to Victoria. *See Gould v. DeBeve*, 330 F.2d 826, 827, 830–31 (D.C.Cir.1964). However, WMATA presented no evidence from which a reasonable jury could have concluded that Marie Weston was not exercising ordinary care.

11. The district court also instructed the jury on the plaintiffs' theory of *res ipsa loquitur*. Although not all accidents on escalators are of the type that would not ordinarily occur in the absence of someone's negligence, "it may be common knowledge that escalator mechanisms do not catch the feet or hands of riders unless someone is negligent." *Hailey v. Otis Elevator Co.*, 636 A.2d 426, 429 (D.C.1994); *see also Bell v. Westinghouse Elec. Corp.*, 483 A.2d 324, 329 (D.C.1984). The doctrine of *res ipsa loquitur* allows the plaintiff to get to the jury based only on circumstantial evidence of the defendant's negligence. *See* 4 HARPER, JAMES & GRAY, THE LAW OF TORTS § 19.11, at 69–73 (2d ed. 1986). When the jury entered a verdict for WMATA on the theory of "ordinary negligence," it rejected the plaintiffs' *res ipsa loquitur* theory.

plaintiffs argue on appeal that they are entitled to have the case remanded for a new trial in the event that the negligence *per se* verdict is overturned.

Accordingly, because the jury found that WMATA was not negligent under a standard of ordinary care and there are no grounds for which the plaintiffs could receive a new trial, we remand the case to the district court with instructions to enter judgment for WMATA.