PUBLIC COPY – SEALED INFORMATION DELETED

# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued October 6, 2016        Decided June 25, 2019
Reissued August 30, 2019

No. 14-3043

IN RE: SEALED CASE

Appeal from the United States District Court
for the District of Columbia
(No:1:10-cr-00334-1)

Before: HENDERSON and GRIFFITH, *Circuit Judges*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

Opinion concurring in part and concurring in the judgment filed by *Circuit Judge* HENDERSON.

GRIFFITH, *Circuit Judge*:[1] Appellant pleaded guilty to violating 21 U.S.C. § 960a, which prohibits using the proceeds of drug trafficking to support foreign terrorist groups. He now appeals his conviction. This case requires us to address how the Foreign Commerce and Due Process Clauses of the Constitution limit the extraterritorial application of the statute, and to consider the effect of Appellant's guilty plea on his

---

[1] **NOTE:** Portions of this opinion contain **Sealed** information, which has been redacted.

2

PUBLIC COPY – SEALED INFORMATION DELETED

ability to appeal his conviction. We conclude that Congress had the authority to criminalize Appellant's conduct even though his actions occurred outside of the United States, and that his plea agreement precludes his other arguments on appeal. Accordingly, we affirm Appellant's conviction.

I

Because of the threat they posed to the security of the United States and its citizens, between Year and Year the State Department designated as terrorist organizations Organization 1 and Organization 2. ███████████████████ Both groups controlled territory in Country A involved in the drug trade. Appellant was a key leader of an extensive criminal enterprise that produced and transported drugs in those areas, flying large amounts of drugs from Country A to Country B, Country C, Country D, and Country E. For example, while in Country B, Appellant supervised the delivery of large quantities of drugs, reloading the planes used to drop off the drugs with millions of U.S. dollars and other currency that were then flown to Country A. He knew some of that money was being paid as a "tax" to Organization 1 and Organization 2 in exchange for permission to operate in their territory, and that those groups were actively engaging in terrorism. At one point, he also personally participated in the delivery of money and weapons to Organization 1.

A federal grand jury indicted Appellant on a single count of violating 21 U.S.C. § 960a. Broadly speaking, the statute criminalizes supporting terrorist groups with the proceeds of illegal drug trafficking. The statute has three parts. First, it identifies a set of drug-related activities that would be punished under a separate statute if they were committed within the

PUBLIC COPY – SEALED INFORMATION DELETED

jurisdiction of the United States. The statute then specifies that it prohibits engaging in those drug-related activities "knowing or intending to provide, directly or indirectly, anything of pecuniary value to any person or organization that has engaged or engages in terrorist activity." 21 U.S.C. § 960a(a).

Finally, the statute contains five jurisdictional provisions. The government need prove only one, and three are relevant here. Jurisdiction exists when either the terrorist offense or drug activity involved in the charged conduct would independently violate U.S. criminal law; when "the offense, the prohibited drug activity, or the terrorist offense occurs in or affects interstate or foreign commerce"; or when a defendant, after violating the substantive provisions of § 960a, "is brought into or found in the United States, even if the conduct required for the offense occurs outside the United States." *Id.* § 960a(b)(1), (2), (5).[2]

Here, the government initially alleged that Appellant had conspired to manufacture, distribute, and possess with intent to distribute a quantity of drugs. The government charged that Appellant then paid Organization 1 and Organization 2 for permission to operate in their territory using proceeds of that conspiracy. The government asserted that three of the statute's jurisdictional elements were met because "the prohibited drug

---

[2] Jurisdiction also exists when the support given is for "a terrorist offense that causes or is designed to cause death or serious bodily injury to a national of the United States while that national is outside the United States, or substantial damage to the property of a legal entity organized under the laws of the United States . . . while that property is outside of the United States," or when the drug or terrorist activity giving rise to the offense occurs outside of the United States and the defendant is a U.S. national or organization. 21 U.S.C. § 960a(b)(3), (4).

**PUBLIC COPY – SEALED INFORMATION DELETED**

activity and terrorist offense violate[d] the criminal laws of the United States, specifically" 18 U.S.C. § 2339B, which criminalizes the material support of foreign terrorist organizations; "the prohibited drug activity and the terrorist offenses occur[ed] in or affect[ed] interstate or foreign commerce"; and Appellant was brought into the United States after the conduct that violated the statute occurred abroad.

Appellant was arrested on Date and extradited from Country A. He was arraigned in federal district court in the District of Columbia on Date. In Month, Appellant moved to dismiss the indictment, arguing that (1) the indictment did not allege all the elements of the offense charged; (2) the indictment failed to put him on adequate notice of the conduct that was allegedly criminal; (3) no nexus between the charged conduct and the United States existed, meaning that his prosecution violated the Due Process Clause; and (4) the jurisdictional reach of § 960a exceeded Congress's enumerated powers, both facially and as-applied in this case.



Appellant

PUBLIC COPY – SEALED INFORMATION DELETED

never moved to dismiss the ███████ information to which he pleaded guilty.

As part of the plea agreement, Appellant also stipulated to a statement of facts detailing his participation in the scheme and agreed that those facts "satisf[ied] each of the essential elements of the charge to which [he] [was] entering []his plea." He expressly waived the right to appeal his sentence in all but a few limited circumstances not applicable here. ███████ ███████ the district court sentenced Appellant to time in prison.

Appellant did not expressly waive his right to appeal his conviction, and we must first determine whether his guilty plea bars his appeal. After we held oral argument, the Supreme Court granted certiorari in *Class v. United States*, 137 S. Ct. 1065 (2017), a case that raised the same issue. We held Appellant's appeal in abeyance pending a decision in *Class*, which has been announced. We requested supplemental briefing regarding the effect of that decision on Appellant's appeal.

II

Appellant challenges his conviction on three grounds. First, he argues that Article I of the Constitution does not authorize Congress to pass a criminal statute with the extraterritorial reach of § 960a. Second, he claims that due process requires a greater connection between the punished conduct and the United States than existed here. Finally,

6

Appellant contends that his behavior does not satisfy some of the statute's elements.[3] We reject each of these challenges.

A

Generally, "[u]nconditional guilty pleas" like Appellant's that "are knowing and intelligent" and do not reserve some ground for appeal in writing serve to "waive the pleading defendant['s] claims of error on appeal, even constitutional claims." *United States v. Delgado–Garcia*, 374 F.3d 1337, 1341 (D.C. Cir. 2004); *see also* FED. R. CRIM. P. 11(a)(2). There are limited exceptions to this rule, and Appellant maintains this case falls within one: the right to argue on appeal that a prosecution was defective from its inception, because the defendant could not lawfully have been "haled into court at all." *Blackledge v. Perry*, 417 U.S. 21, 30-31 (1974).

The Supreme Court first articulated this exception in *Blackledge v. Perry* and *Menna v. New York*, 423 U.S. 61 (1975). The *Blackledge-Menna* doctrine recognizes that there are some cases in which the Constitution prohibits a prosecution even though the defendant has admitted in a plea agreement that he did exactly what the government alleged.

---

[3] In his opening brief, Appellant also argued that "[t]he superseding information in this case appears to equate the statutory language 'has engaged or engages in terrorist activity . . . or terrorism' with presence on the State Department list of [Foreign Terrorist Organizations]." Appellant Br. 21. Appellant suggested that constitutes a bill of attainder and "a violation of separation of powers." *Id.* at 21-22. After the government clarified in its brief that it does not, in fact, consider listing by the State Department to be conclusive of that particular statutory element, Gov't Br. 32, Appellant withdrew this aspect of his appeal, Appellant Reply Br. 28.

7

*Menna*, 423 U.S. at 62 n.2. In such a case, a guilty plea will not bar a constitutional challenge to the prosecution. *Id.* For example, a guilty plea does not preclude "a claim that the charged offense violates the double jeopardy clause," *Delgado–Garcia*, 374 F.3d at 1341, or bar the argument that the prosecution was vindictive, *see Blackledge*, 417 U.S. at 30.

The boundaries of the *Blackledge-Menna* doctrine were recently clarified in *Class v. United States*, 138 S. Ct. 798 (2018). In that case, the Supreme Court held that a guilty plea will never, "by itself," bar a defendant from challenging the constitutionality of his statute of conviction, *id.* at 803, because such an argument "call[s] into question the [g]overnment's power to 'constitutionally prosecute' him," *id.* at 805 (quoting *United States v. Broce*, 488 U.S. 563, 575 (1989)). A guilty plea does, however, bar a defendant from making arguments on appeal that contradict admissions made in his plea agreement. *Id.* at 805 (holding that a defendant who pleads guilty "relinquishes any claim that would contradict the 'admissions necessarily made upon entry of a voluntary plea of guilty'" (quoting *Broce*, 488 U.S. at 573-74)).

As the government concedes, Appellant's constitutional arguments are largely of the type that, as *Class* made clear, survive a guilty plea under the *Blackledge-Menna* doctrine. Gov't Suppl. Br. 3-4. Appellant's challenges to the potential reach of Congress's power under Article I and the restraints on that power under the Due Process Clause "call into question the [g]overnment's power to constitutionally prosecute him." *Class*, 138 S. Ct. at 805 (internal quotation marks omitted). And, critically, his challenge to Congress's authority to enact § 960a and his due process claim do not contradict any of the admissions made in his plea agreement. *See id.* at 804. Instead, "[t]hey are consistent with Appellant's knowing, voluntary,

8

PUBLIC COPY – SEALED INFORMATION DELETED

and intelligent admission that he did what the [charging document] alleged," and "can be resolved without any need to venture beyond that record." *Id.* (internal quotation marks omitted). That means that Appellant may still raise at least these arguments despite pleading guilty. *Id.* at 807.

Appellant argues that our review is de novo. The government counters that his failure to obtain a ruling on his motion to dismiss means that our review is for plain error. Because the challenges not barred by Appellant's guilty plea fail even under de novo review, we need not resolve which standard applies.

B

The parties agree that congressional authority to enact § 960a must be found among the powers enumerated in Article I, section 8. Appellant Suppl. Br. 9; Gov't Suppl. Br. 5. They disagree whether such authority exists, although Appellant's reasons for doubting Congress's power are not always clear. At times he characterizes his Article I claim as a facial challenge to the statute, arguing that § 960a "applies only extraterritorially" and "[i]n every case where the statute is applied extraterritorially, it is invalid as beyond the power of Congress to legislate." Appellant Suppl. Br. 7. Elsewhere he frames his argument as turning on "the facts of the instant case," *id.* at 11, arguing that Congress lacked the power to criminalize the funding of terrorist organizations with the proceeds of drug trafficking when both the trafficking and funding "occur[] solely on foreign soil" and "do[] not affect American citizens or property," *id.* at 5. This second version of his argument suggests that the statute may constitutionally be applied to some defendants—just not to Appellant, given what

9

PUBLIC COPY – SEALED INFORMATION DELETED

he characterizes as the attenuated connection between his conduct and the United States.

In light of this uncertainty, we assume for purposes of this appeal that Appellant intended to bring both a facial and an as-applied challenge to § 960a.[4] The government responds to the former by disputing that every application of the statute is unconstitutional, and to the latter by arguing that, even accepting as true Appellant's characterization of his actions' connection to the United States, Congress had the power to criminalize his behavior.

1

---

[4] Our colleague understands Appellant to bring only a facial challenge to § 960a. We agree that Appellant frequently describes his argument in those terms. But, for the reasons given in Parts II.B.1-2, Appellant disputes only certain applications of § 960a: specifically, applications of the statute to conduct that occurs in commerce between foreign countries that affects commerce with the United States. Put another way, although the statute contains numerous jurisdictional provisions, the substance of Appellant's briefing addresses part of one of them. This sort of "separate attack on a defined subset of the statute's applications" is better read as an as-applied challenge. *United States v. Stevens*, 559 U.S. 460, 473 n.3 (2010). Contrary to our colleague's suggestion, in reaching this conclusion we have not forgotten "the cardinal principle of judicial restraint" and decide no more than is necessary to resolve the case. *Post*, at 2-3 (Henderson, J., concurring in part and concurring in the judgment). We have a simple disagreement about how best to characterize Appellant's arguments. That disagreement implicates no grand constitutional values, only different approaches to reading briefs and arguments. We simply see an as-applied challenge amidst the sometimes confusing jumble of Appellant's arguments when our colleague does not.

10

To succeed on a facial challenge, a defendant must generally "'establish[] that no set of circumstances exists under which the [statute] would be valid,' *i.e.*, that the law is unconstitutional in all of its applications." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). Although there has been some debate whether every facial challenge must meet the *Salerno* standard, "all agree that a facial challenge must fail where the statute has a plainly legitimate sweep." *Id.* (internal quotation marks omitted); *Hodge v. Talkin*, 799 F.3d 1145, 1156 (D.C. Cir. 2015).

That means that Appellant's facial challenge cannot succeed if § 960a has a "plainly legitimate sweep." We conclude that it does. Indeed, Appellant does not contest (nor could he) that Congress acted within its Article I power when providing for the prosecution of persons meeting many of the criteria set forth in § 960a(b). For example, courts have long recognized that Congress may criminalize many actions that target U.S. nationals or interests abroad, or provide for the prosecution of much conduct by U.S. nationals or organizations overseas. 21 U.S.C. § 960a(b)(3), (4); *see, e.g., United States v. Bowman*, 260 U.S. 94, 98-99 (1922). Prior prosecutions under § 960a involved defendants who had engaged in such conduct. *See, e.g., United States v. Mohammed*, 693 F.3d 192, 195-96 (D.C. Cir. 2012) (defendant trafficked drugs to support the Taliban, which was engaged in a conflict with the U.S. military in Afghanistan); *United States v. Viglakis*, No. 12-cr-585, 2013 WL 4477023, at *2 (S.D.N.Y. Aug. 14, 2013) (defendant supplied weapons to FARC, which "has engaged in violence against U.S. persons, commercial [interests,] and property interests" located abroad); *United States v. Saade*, No. 11-cr-111, 2012 WL 2878087, at *2 (S.D.N.Y. July 11, 2012) (denying a motion to dismiss an indictment on due process

PUBLIC COPY – SEALED INFORMATION DELETED

grounds when the proceeds of the defendant's drug trafficking "would be used by the Taliban to buy weapons with which to fight Americans"). Because Article I permits Congress to authorize these applications of § 960a, Appellant's facial claim fails.

2

Appellant next argues that Article I does not authorize Congress to criminalize the behavior in which *he* engaged. Under the *Blackledge-Menna* doctrine, that argument can only survive Appellant's guilty plea if it is consistent with the factual admissions Appellant made as part of his plea agreement. *Class*, 138 S. Ct. at 804. Put another way, because of what he already agreed to in his plea, Appellant may not relitigate before us what he did or did not do. His arguments on appeal must be based on the facts established through his plea. The government and Appellant believe that to be the case here, but we disagree in part. Aspects of Appellant's as-applied challenge ignore or revise facts to which he stipulated.

As we noted in discussing Appellant's facial challenge, elements of § 960a(b) limit the extraterritorial reach of the statute. The government must find jurisdiction to prosecute Appellant under at least one of those elements. Appellant stipulated that the facts in this case fulfill three: (1) Section 960a(b)(1), because the prohibited drug activity and terrorist offense violated the criminal law of the United States that prohibits providing material support to foreign terrorist groups, 18 U.S.C. § 2339B; (2) Section 960a(b)(2), because the drug activity and terrorist offenses connected to Appellant occurred in or affected interstate or foreign commerce; and (3) Section 960a(b)(5), because Appellant was brought to the United States for prosecution.

12

Because parties may not stipulate to legal conclusions in plea agreements, *see United States v. Flores*, 912 F.3d 613, 619 (D.C. Cir. 2019), Appellant's plea then sets forth the specific facts that establish how his conduct fulfilled these elements. Relevant here, the agreement describes how he provided money and weapons to Organization 1 and Organization 2, "which were designated Foreign Terrorist Organizations by the United States Department of State during the period of the conspiracy." A Foreign Terrorist Organization is a "foreign organization" that "engages in terrorist activity . . . or terrorism . . . or retains the capability and intent to engage in terrorist activity or terrorism" that "threatens the security of United States nationals or the national security of the United States." 8 U.S.C. § 1189. Indeed, Appellant stipulated that he knew that Organization 1 and Organization 2 were actively engaging in terrorism while he was facilitating payments to them, sometimes in weapons. Appellant also stipulated that the money and weapons he supplied to Organization 1 and Organization 2 came from the large quantities of drugs he moved around the region. Taken together, Appellant admitted that he had trafficked millions of dollars' worth of drugs and weapons between multiple countries to fund groups engaging in terrorism that threatened the security of U.S. nationals or the national security of the United States.

Appellant now argues that Congress lacks the power under Article I to authorize the application of § 960a to this admitted conduct. In light of the admissions in Appellant's plea agreement, we disagree, and conclude that Congress had

PUBLIC COPY – SEALED INFORMATION DELETED

authority under the Foreign Commerce Clause to authorize Appellant's prosecution.[5]

Appellant argues that his conduct was beyond the reach of Congress's power "[t]o regulate Commerce with foreign Nations" because it involved only "matters between two or more foreign countries not involving the United States," Appellant Suppl. Br. 9, and that his actions at most "'affect[ed]' American commerce," Appellant Reply Br. 18. Doubt certainly exists as to Congress's ability under the Foreign Commerce Clause to criminalize conduct with *no* effect on the United States. *See, e.g.*, *United States v. Baston*, 818 F.3d 651, 667 (11th Cir. 2016) (observing that the Supreme Court has never "thoroughly explored the scope of the Foreign Commerce Clause"); *Baston v. United States*, 137 S. Ct. 850, 851 (2017) (Thomas, J., dissenting from denial of certiorari) (observing that the Supreme Court has only evaluated laws invoking the Foreign Commerce Clause to "regulat[e] conduct with a significant connection to the United States"). *But see Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 813-14 (1993) (Scalia, J., dissenting) ("Congress has broad power under [the Foreign Commerce Clause], and this Court has repeatedly upheld its power to make laws applicable to persons or activities beyond our territorial boundaries where United States interests are affected."); *Bd. of Trs. of Univ. of Ill. v. United States*, 289 U.S. 48, 56 (1933) (describing as an "essential attribute of the power" granted to Congress under the

---

[5] Accordingly, we need not reach the government's contention that Congress's power under Article I, section 8 "[t]o define and punish Piracies and Felonies committed on the high Seas, and Offenses against the Law of Nations" and "[t]o make all Laws which shall be necessary and proper" to execute treaties justified application of § 960a to Appellant's conduct.

14

Foreign Commerce Clause "that it is exclusive and plenary"). After all, the clause refers to "Commerce *with* foreign Nations," lending support to the notion that some connection to the United States must be established for Congress to legislate pursuant to this power. U.S. CONST. art. I, § 8, cl. 3 (emphasis added); *Gibbons v. Ogden*, 22 U.S. (9 Wheat) 1, 3 (1824) ("The power to regulate commerce extends to every species of commercial intercourse *between* the United States and foreign nations." (emphasis added)); Anthony J. Colangelo, *The Foreign Commerce Clause*, 96 VA. L. REV. 949 (2010) (arguing that the Foreign Commerce Clause authorizes only regulation of commerce with some nexus to the United States and that it may never authorize greater regulation of activities within foreign nations than would be authorized by the Interstate Commerce Clause within states).

But Appellant's argument goes further, asking us to hold that Congress can only make criminal a foreign commercial activity that takes place in the course of commerce with the United States. Such a narrow construction would bar Congress from outlawing drug trafficking that lends financial support to terrorist organizations in foreign countries when that support merely "affects" commerce with the United States. Although our sister circuits disagree on the precise test that should be used to determine when overseas actions may be proscribed under the Foreign Commerce Clause, every Court of Appeals to have considered the question in the context of commercial activity such as Appellant's has disavowed his cramped reading. Some circuits have used the familiar Interstate Commerce Clause framework from *United States v. Lopez*, 514 U.S. 549, 558-59 (1995), and concluded that Congress has broad power to regulate overseas commercial conduct that has a "substantial effect" on commerce with the United States. *See, e.g., United States v. Durham*, 902 F.3d 1180, 1192-93 (10th

15

Cir. 2018); *Baston*, 818 F.3d at 667-68; *United States v. Pendleton*, 658 F.3d 299, 308 (3d Cir. 2011). Some permit the regulation of foreign conduct with less of an effect on the United States. *See, e.g., United States v. Bollinger*, 798 F.3d 201, 215-16 (4th Cir. 2015) (holding that Congress may regulate conduct abroad that "demonstrably" rather than "substantially" affects commerce with the United States); *United States v. Clark*, 435 F.3d 1100, 1114 (9th Cir. 2006) (requiring only a "constitutionally tenable nexus with foreign commerce"), *partially superseded as noted in United States v. Pepe*, 895 F.3d 679, 689 (9th Cir. 2018). But no court has adopted the narrow view of congressional power Appellant champions. We find our sister circuits' consistent adoption of at least *some* sort of effects test to be persuasive. *Cf. RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2105 (2016) (holding that the term "foreign commerce" in the RICO statute restricts the reach of the law to enterprises that "engage in, or affect in some significant way, commerce directly involving the United States—*e.g.*, commerce between the United States and a foreign country").

We need not, however, define today the precise level of "effect" necessary, because the stipulations in Appellant's plea agreement place his conduct abroad within Congress's reach under any version of the test. As already noted, his was not a minor offense, the effects of which were only tangentially related to the United States. Appellant was a leader of a large, transnational drug trafficking conspiracy that supported established and powerful terrorist groups. Those groups murdered and kidnapped civilians, and the State Department had publicly concluded that they threatened U.S. nationals and interests. Appellant's plea agreement does not specify where the drugs he trafficked were ultimately headed, but given the quantity of drugs, the involvement of Organization 1, and the

**PUBLIC COPY – SEALED INFORMATION DELETED**

nature of the Country A drug export markets in which Appellant participated, his actions had a significant effect on the drug trade between the United States and the countries in which he operated.

Appellant stipulated, moreover, that the terrorist organizations he supported through his international drug trafficking threatened U.S. nationals or the national security of the United States. *See* Superseding Information at 2-3, No. 10-cr-334 (D.D.C. Dec. 21, 2010), Dkt. No. 6 (stating that Organization 2 and Organization 1 "were designated Foreign Terrorist Organizations by the United States Department of State during the period of the conspiracy"); 8 U.S.C. § 1189(a)(1)(C) (requiring that "the terrorist activity or terrorism of" an organization named as a Foreign Terrorist Organization by the State Department "threaten[] the security of United States nationals or the national security of the United States"). That magnifies the effect of his conduct on commerce between the countries where he was operating and the United States. *Cf. Strassheim v. Daily*, 221 U.S. 280, 285 (1911) ("Acts done outside a jurisdiction, but intended to produce and producing detrimental effects within it, justify a state in punishing the cause of the harm as if he had been present at the effect, if the state should succeed in getting him within its power.").

Appellant's argument for why we should not apply *any* version of an effects test when evaluating Congress's power under the Foreign Commerce Clause is conclusory and without merit. He fails to address the reasoning given by those circuits that have considered the question or to explore the history of the clause. Instead, he simply relies on the bare assertion that a power with such a weak limit would be too broad. Appellant

17

Reply Br. 18-19; Appellant Suppl. Br. 9. Given the Supreme Court's longstanding approach to the Interstate Commerce Clause and the approach of our sister circuits to the Foreign Commerce Clause, the need for the strict construction Appellant urges is by no means self-evident. And once we conclude that some version of an "effects test" applies, Appellant's remaining arguments are simply attempts to recharacterize the facts to which he stipulated, minimizing his role in the conspiracy and its magnitude to suggest that the effect of his behavior on commerce with the United States was too small for Congress to reach. Even after *Class*, we may not consider such arguments when, as here, they contradict the admissions made in the defendant's plea agreement.

The facts of *Class* illustrate why this aspect of Appellant's as-applied challenge is foreclosed by his plea agreement. Rodney Class pleaded guilty to possessing a firearm on the grounds of the U.S. Capitol. *Class*, 138 S. Ct. at 802; *see also* 40 U.S.C. § 5104(e)(1)(A)(i) (making it a crime to "carry on or have readily accessible to any individual on the Grounds or in any of the Capitol Buildings a firearm"). The statute under which he was convicted required proof of (1) carrying or having readily accessible a firearm, dangerous weapon, explosives, or an incendiary device; and (2) presence "on the Grounds or in any of the Capitol Buildings." 40 U.S.C. § 5104(e)(1)(A)(i). As part of his plea, Class stipulated that both of these elements had been met because he had, in fact, possessed a firearm on the Capitol Grounds when he drove his vehicle into a parking lot near the Capitol. *Class*, 138 S. Ct. at 802, 804. On appeal, Class argued in relevant part "that he was denied fair notice that weapons were banned in the parking lot" in violation of the Due Process Clause, both because no signs explained that the parking lot was an area in which firearms were prohibited and because the statute itself was so vague as

18

to provide insufficient notice of what constituted the "Capitol Grounds." *Id.* at 802; *id.* at 808, 813 n.4 (Alito, J., dissenting). Critically, neither his plea agreement nor the statute said anything about his being aware that the parking lot was part of the Capitol Grounds.

Because of that omission, the Supreme Court concluded that Class could press his due process claim on appeal because it was "consistent with [his] knowing, voluntary, and intelligent admission that he did what the indictment alleged," and could be resolved on appeal by reference to the existing record. *Id.* at 804 (majority opinion) (internal quotation marks omitted). Although Class had agreed that he was carrying weapons in a prohibited place, he had not admitted to knowledge of the nature of that place. *Id.* His argument that it violated the Due Process Clause to prosecute someone for unknowingly possessing firearms in a prohibited location thus did not contradict any of the "admissions necessarily made" when he pleaded guilty. *Id.* at 805 (quoting *Broce*, 488 U.S. at 573-74).

This case more closely resembles a case that *Class* was not. Had Class admitted in his plea agreement that he knew he was in a place where possession of firearms was prohibited, he would not have been able to argue on appeal that he lacked sufficient notice. Appellant made that kind of contradictory admission when he stipulated to the facts described above, which demonstrate that his conduct affected commerce with the United States. As we concluded above, Appellant may challenge whether conduct that only "affects" foreign commerce with the United States may be prohibited by Congress—just as Class, in our hypothetical, would remain free to claim that a statute that does not require notice violates the Due Process Clause. Appellant may not, however, argue

19

that his conduct failed to affect foreign commerce without contradicting the terms of his plea agreement.[6]

## C

Appellant next argues that his prosecution under § 960a, even if authorized by Article I, violates the Due Process Clause because the government has not established a sufficient nexus between his conduct and the United States. We disagree.

Appellant contends that Congress, subject to exceptions not applicable here, may only proscribe overseas conduct when a nexus exists between the conduct and the United States. We have repeatedly declined, however, to hold that the Due Process Clause demands such a nexus—or to even resolve "whether the Due Process Clause constrains the extraterritorial

---

[6] Appellant's claim reveals the difficulty faced by prosecutors negotiating plea agreements to resolve charges brought under statutes with jurisdictional elements such as § 960a. By pleading guilty, Appellant prevented the government from putting on evidence of his crime's effect on foreign commerce with the United States. His appeal then posits that the lack of such evidence renders his prosecution unconstitutional. Prosecutors would be well-served by ensuring that stipulations of fact entered into by pleading defendants include the factual bases for elements that bring the defendants' conduct within the scope of Congress's power to legislate, rather than simply reciting that such elements have been met. *Cf. Weston v. Wash. Metro. Area Transit Auth.*, 78 F.3d 682, 685 (D.C. Cir. 1996) ("While parties may enter into stipulations of fact that are binding upon them unless they can show manifest injustice, parties may not stipulate to the legal conclusions to be reached by the court." (internal quotation marks and citations omitted)). The stipulations of fact here, however, contained such facts.

20

PUBLIC COPY – SEALED INFORMATION DELETED

application of federal criminal laws" at all. *United States v. Ballestas*, 795 F.3d 138, 148 (D.C. Cir. 2015); *see also United States v. Ali*, 718 F.3d 929, 943-44 & n.7 (D.C. Cir. 2013) (declining to reach the question and observing that the court had "not found . . . any case in which extraterritorial application of a federal criminal statute was actually deemed a due process violation . . . suggest[ing] [the defendant's] burden is a heavy one"). Instead, "[t]he ultimate question under the Due Process Clause is not nexus, but is whether application of the statute to the defendant would be arbitrary or fundamentally unfair." *Ballestas*, 795 F.3d at 148 (internal alterations and quotation marks omitted). "[T]he animating principle governing the due process limits of extraterritorial jurisdiction," to the extent such limits exist, "is the idea that 'no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed.'" *Ali*, 718 F.3d at 944 (quoting *Bouie v. City of Columbia*, 378 U.S. 347, 351 (1964)).

Appellant was a leader of an international drug trafficking organization that funded and provided weapons to terrorist groups that openly murdered and kidnapped civilians. These groups, moreover, were publicly designated by the State Department as directly threatening U.S. nationals or the national security of the United States. And various international agreements specifically prohibit Appellant's conduct. *See* International Convention for the Suppression of the Financing of Terrorism, *opened for signature* Dec. 9, 1999, 2178 U.N.T.S. 197 (entered into force Apr. 10, 2002); United Nations Convention Against Illicit Traffic in Narcotic Drugs and Psychotropic Substances, *opened for signature* Dec. 20, 1988, 1582 U.N.T.S. 95 (entered into force Nov. 11, 1990). Appellant can find no refuge in the Due Process Clause. He admitted, after all, that he engaged in conduct, proscribed by international agreement, that supported groups that threaten

21

U.S. nationals or the national security of the United States. *See Ali*, 718 F.3d at 944-45 (describing, on the basis of similar international agreements, hostage taking as "an offense whose proscription 'is a result of universal condemnation of those activities and general interest in cooperating to suppress them'" (quoting RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW § 404 cmt. a (AM. LAW INST. 1987))). To apply § 960a to Appellant "was neither arbitrary nor fundamentally unfair." *Ballestas*, 795 F.3d at 148.

## III

Appellant also argues that his conduct did not satisfy the jurisdictional elements of 21 U.S.C. § 960a(b), a defect in the district court's subject matter jurisdiction that cannot be waived by his subsequent guilty plea. But Appellant misunderstands the work these elements of the statute perform.

When used in statutory provisions like § 960a(b), jurisdiction can refer either to a "so-called 'jurisdictional element' addressing the reach of [Congress's] legislative authority," or "subject[ ]matter jurisdiction—the jurisdiction of the 'district courts.'" *United States v. Miranda*, 780 F.3d 1185, 1195 (D.C. Cir. 2015). The former, "consistent with the description 'jurisdictional *element*,' treat[s] the relevant condition as an element of the offense to be found by a jury," and proof of such an element "is no different from proof of any other element of a federal crime." *Id.* (quoting *Hugi v. United States*, 164 F.3d 378, 381 (7th Cir. 1999)); *see also id.* at 1191 ("[T]o ask 'what conduct [a statute] reaches is to ask what conduct [the statute] prohibits, which is a merits question,' not a question of subject[ ]matter jurisdiction." (quoting *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 254 (2010))); *United States v. Gonzalez*, 311 F.3d 440, 443 (1st Cir. 2002) (noting

22

that Congress sometimes "use[s] the word 'jurisdiction' loosely to describe its own assertion of authority to regulate," such as when "it fixes an 'affects interstate commerce' . . . as a condition of the crime," and that these "conditions have nothing whatever to do with the subject matter [jurisdiction] of the federal district court"). In contrast, subject matter jurisdiction "refers to a tribunal's power to hear a case" and presents a legal question. *Miranda*, 780 F.3d at 1191 (quoting *Morrison*, 561 U.S. at 254).

As discussed in Part II.B, § 960a(a) refers to much conduct occurring outside of the United States, and § 960a(b) puts limits on that extraterritorial sweep. "The extraterritorial reach of a statute ordinarily presents a merits question, not a jurisdictional question." *Miranda*, 780 F.3d at 1191. We therefore begin with the presumption that the provision does not speak to the subject matter jurisdiction of the federal courts. We will not, moreover, interpret "a threshold limitation on a statute's scope" as referring to a court's subject matter jurisdiction unless Congress "clearly states" as much. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515 (2006). In arguing that Congress has done so here, Appellant relies on *Miranda*, in which this Court considered the Maritime Drug Law Enforcement Act (MDLEA). The MDLEA prohibits drug activity on two categories of ships: "(1) a vessel of the United States or a vessel subject to the jurisdiction of the United States; or (2) any other vessel if the individual is a citizen of the United States or a resident alien of the United States." 46 U.S.C. § 70503(a), (e). We concluded in *Miranda* that "subject to the jurisdiction of the United States" represented a limit on our subject matter jurisdiction, rather than an element of the offense. 780 F.3d at 1191. Appellant argues that *Miranda* controls the present case, and because § 960a(b) defines our

23

subject matter jurisdiction, his challenge on this point cannot be waived by his plea.

*Miranda*, however, is distinguishable based on the text of the statute at issue. The MDLEA provision defining "[j]urisdiction of the United States with respect to a vessel subject to this chapter" explicitly states that such jurisdiction "is *not an element* of an offense. Jurisdictional issues arising under this chapter are preliminary questions of law to be determined solely by the trial judge." 46 U.S.C. § 70504(a) (emphasis added). Thus, the plain text prevented us from finding that "vessels subject to the jurisdiction of the United States" represented a jurisdictional element because the inquiry was a "preliminary" or threshold issue—a key characteristic of subject matter jurisdiction. *Miranda*, 780 F.3d at 1193. Furthermore, the text stated that the issue was "not an element of the offense," "fortifying its jurisdictional character." *Id.* And finally, the text provided for the issue to be determined solely by the trial judge as a question of law, just as "subject[ ]matter jurisdiction presents a question of law for resolution by the court." *Id.* Taken together, the MDLEA satisfied *Arbaugh*'s "readily administrable bright line" rule that Congress "clearly state[] that a threshold limitation on a statute's scope [would] count as jurisdictional." 546 U.S. at 515-16.

Section 960a(b), in contrast, lacks any of these features, stating only that "[t]here is jurisdiction over an offense under this section if" one of several conditions is met. And each of those conditions resembles the jurisdictional elements commonly found to restrict the scope of congressional, rather than judicial, power. Accordingly, "to ask what conduct [§ 960a] reaches is to ask what conduct [the statute] prohibits, which is a merits question, not a question of subject matter jurisdiction." *Miranda*, 780 F.3d at 1191 (internal quotation

24

marks omitted); *see also United States v. Harrington*, 108 F.3d 1460, 1465 n.2 (D.C. Cir. 1997) (describing jurisdictional elements that restrict the reach of statutes to Congress's enumerated powers by requiring factual findings, such as an effect on interstate commerce). Appellant's guilty plea thus waives his claim that his conduct does not meet the requirements of § 960a(b).

IV

For these reasons, we affirm Appellant's conviction.

*So ordered.*

KAREN LeCRAFT HENDERSON, *Circuit Judge*, concurring in part and concurring in the judgment:* I concur in all but Section II.B.2 of the majority opinion. I cannot join Section II.B.2 because I am convinced Appellant has not mounted an as-applied Article I challenge.

Appellant categorizes his Article I challenge as facial. *See* Appellant Op. Br. 3, 9, 15, 16; Appellant Rep. Br. 2, 17; Appellant Supp. Br. 2, 5, 7. So does the government. *See* Gov't Resp. Br. iii, 21, 23; Gov't Supp. Br. i, 5. And the substance of Appellant's challenge tracks the formal characterization. Indeed, the challenge in his opening brief is facial. *See* Appellant Op. Br. 18 ("Since there is no power enumerated in the Constitution which authorizes Congress to enact 21 U.S.C. sec. 960a, it is unconstitutional on its face."); *id.* at 17 ("The Foreign Commerce Clause permits Congress to regulate commerce *with* foreign nations, not *between* foreign nations. 21 U.S.C. sec. 960a does not purport to regulate commerce between the United States and a foreign country." (internal citation omitted)); *id.* ("[T]he general foreign authority of the legislative branch does not authorize the enactment of 21 U.S.C. sec. 960a."); *id.* at 18 ("The Offenses Clause empowers Congress 'to define and punish . . . Offenses Against the Law of Nations.' . . . To the extent that the term 'Law of Nations' has been expanded beyond piracy, that expansion [does not extend to] financing terrorist organizations," the conduct the statute prohibits.). And, of course, Appellant was required to raise all of his arguments in his opening brief. *See Al-Tamimi v. Adelson*, 916 F.3d 1, 6 (D.C. Cir. 2019) ("A party forfeits an argument by failing to raise it in his opening brief."). Even were we willing to consider an as-applied challenge raised for the first time in his

---

* **NOTE:** Portions of this opinion contain **Sealed** information, which has been redacted.

2

PUBLIC COPY – SEALED INFORMATION DELETED

supplemental brief—which, I submit, we should not be—there is no as-applied challenge raised there. In his supplemental brief, Appellant continues to argue that there is *no* constitutional application of 21 U.S.C. § 960a. *See* Appellant Supp. Br. at 7 ("In every case where the statute is applied extraterritorially, it is invalid as beyond the power of Congress to legislate. [And] the statute applies only extraterritorially."). The majority opinion references two pages in his supplemental brief that might be read, at first blush, as unintentionally raising an as-applied challenge. *See* Maj. Op. 8 (citing Appellant Supp. Br. 5, 11). Appellant's language in both instances, however, is consistent with a facial challenge. *See* Appellant Supp. Br. 5 (Appellant's argument that "21 U.S.C. sec. 960a is *facially* unconstitutional because there is no power granted to Congress under Article I, Section 8 of the Constitution which authorizes the extraterritorial reach of conduct occurring solely on foreign soil and which does not affect American citizens or property" is based on his (erroneous) belief that the statute prohibits only conduct occurring solely on foreign soil, which does not affect American citizens or property (emphasis added)); *id.* at 11 (Appellant's reference to "the facts of the instant case" is a response to the government's attempt to defeat his facial challenge by demonstrating that the statute is constitutional as applied to him). Plainly, there are constitutional applications of the statute. That is why we reject Appellant's facial constitutional challenge. *See* Maj. Op. Section II.B.1. But it is *not* a reason to treat his facial challenge as as-applied. *See* Gov't Supp. Br. 5 (arguing that Appellant "did not" raise an as-applied challenge and that existence of constitutional applications of statute defeats Appellant's facial challenge).

Resolving only the facial Article I challenge would allow us to avoid weighing in on the important constitutional

3

question discussed in Section II.B.2, which should be left for a day when it is properly presented. I fear that, in their haste to explain how the foreign commerce clause works in the criminal context, my colleagues have forgotten "the cardinal principle of judicial restraint—if it is not necessary to decide more, it is necessary not to decide more." *Cohen v. Bd. of Trs. of Univ. of D.C.*, 819 F.3d 476, 485 (D.C. Cir. 2016) (Griffith, J.) (alteration omitted) (quoting *PDK Labs, Inc. v. DEA*, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring in part and concurring in the judgment)). I have not forgotten that principle and therefore do not join Section II.B.2 of the majority opinion.